**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Russell E. HILL, Defendant–Appellant.**

**No. 91–5905.**

United States Court of Appeals, Sixth Circuit.

Argued March 26, 1992.

Decided June 25, 1992.

---

Joseph M. Whittle, U.S. Atty., Stephen G. Frye, Asst. U.S. Atty. (argued and briefed), Louisville, Ky., for plaintiff-appellee.

Kenneth C. Plotnik (argued and briefed), Louisville, Ky., for defendant-appellant.

Before: NELSON and BOGGS, Circuit Judges; and WELLFORD, Senior Circuit Judge.

BOGGS, Circuit Judge.

Russell Hill appeals his convictions for bank robbery and armed bank robbery. For the reasons that follow, we affirm.

I

On February 4, 1991, a grand jury charged Stanley R. Mercer and Hill, in a two-count indictment, with violating both 18 U.S.C. § 2113(a) and 2113(d). On April 17, 1991, the jury found both men guilty of both charges. The district court sentenced Hill to twenty years' imprisonment (count one merging with count two), to run consecutively to the sentence that Hill was then serving for state drug and battery convictions in Indiana.

Prior to the trial, Hill made a motion to suppress any in-court identification of him by any bank teller. The district court took the motion under advisement and the trial began. Before the United States called the first bank teller to testify, the court held a suppression hearing on the identification issue. All four tellers testified at the suppression hearing. At the conclusion of the hearing, Hill renewed his motion to suppress any in-court identification by the tellers. In the alternative, Hill asked the court to require the tellers to pick him out of a line-up before allowing them to identify him at trial. The court denied the motions.

At trial, the prosecution presented five principal witnesses: Ann Hill and the four tellers who were present in the bank when the robbery took place. Ann Hill is the estranged wife of Russell Hill. She received immunity from prosecution for her testimony. Ann Hill testified that she, Russell Hill, and Mercer had planned and committed a robbery of the Great Financial Federal Savings and Loan in downtown Louisville on June 13, 1986.

Ann Hill testified to the following facts. A week before the robbery, she, Russell Hill, and Mercer drove to Louisville and, after considering other targets, decided to rob the Great Financial Federal. On June 12, 1986, the three rented a U–Haul truck in Indianapolis and drove to Louisville. In Louisville, they stole a car out of a parking lot in order to use it as their getaway vehicle. That evening, they drove the truck and the stolen car back to Indianapolis.

On June 13, 1986, the three returned to Louisville with both vehicles. They left the U–Haul truck at an apartment complex approximately one block from the Bank. Using the stolen car, Ann Hill drove her husband and Mercer to a nearby Pic–Pac supermarket to get some bags. Around 11:00 or 11:30, Ann Hill drove to the bank and dropped off the two men. Ann testified that she watched them enter the bank and then drove to the drive-up window and observed the two men robbing the bank. She stated that both Russell Hill and Mercer brandished .357 Magnums while they robbed the bank.

Following the robbery, both men fled the bank carrying grocery bags filled with money. Approximately half a block from the bank, dye packs that the tellers had placed in the bags with the money exploded. The robbers then threw the grocery bags containing the money and dye packs from the car. The trio raced to the apartment complex, where they abandoned the stolen car and drove the truck back to Indianapolis.

At trial, Ann Hill identified Russell Hill and Mercer as the two men who robbed the bank. She explained precisely what the two were wearing when they robbed the bank. She further identified pictures of the bank and pictures of the abandoned car, which were taken by police immediately after the robbery. She also identified what remained of the Pic–Pac grocery bags in which the dye exploded.

Russell Hill attacks the credibility of Ann Hill's testimony by emphasizing that, in return for her testimony, Ann Hill received immunity from prosecution for the bank robbery as well as for three other robberies that she had committed. Further, Ann is a convicted felon. Most importantly, says Russell Hill, his marriage to Hill was quite stormy. In fact, on several occasions Ann told third parties that she would do whatever she could to see that Russell Hill would stay in jail for the rest of his life. Witnesses called by Russell at trial who had known the couple for many years all testified that Ann had threatened to keep her husband locked up and away from her.

Russell Hill contends that the reason for Ann's animus toward him was that during part of their marriage Russell was living with another woman, Susan Cossell, with whom he eventually had a child on April 25, 1987. Several defense witnesses also testified that, contrary to Ann's claims, Russell was living with Susan Cossell and not with Ann Hill at the time of the alleged robbery. Susan Cossell was especially adamant about the fact that Russell had been living with her at the time because she claims that it was the time when her child was conceived. Russell Hill's brief describes Cossell's testimony as follows:

> Susan Cossell recited a litany of facts showing the hatred, contempt and scorn Ann Hill showered on her and her son to show why she [Ann] might be motivated to testify against her [Ann's] husband, appellant. [Cossell's] testimony was especially convincing as she no longer had any intimate relationship with appellant and was at the trial obviously pregnant, and by someone other than Russell Hill.

Hill's strategy at trial then, was to attack the credibility of Ann Hill's testimony vehemently. The controversy in this ap-

peal, however, surrounds the testimony of the bank tellers who witnessed the June 13, 1986 robbery. Russell Hill had never been presented to any of these witnesses in a lineup or in a photo spread. As stated, the defense moved to suppress any in-court identification of Hill by the tellers.

The district court held a suppression hearing before the tellers were called. The jury and both defendants were removed from the courtroom. The first teller witness, Karen Summers, testified that she was in the bank when it was robbed. She had seen the bank surveillance photos of the robbery, once right after the robbery and then a second time the day before trial when she spoke to the United States Attorney. Summers stated that the two men were wearing disguises but were still recognizable. One of the two men was larger than the other. The taller one had tape over his nose and the smaller man had "a strange chin." They both wore sunglasses and hats. When asked if she could identify them, she stated: "I could do my best."

Virginia Hargrove was the next teller to testify. When asked if she could identify the men, she stated: "It's been five years. I'll do my best to identify them." She had not seen the surveillance photos since the event itself. She described the taller man as having a bandage over his nose, with a wild print shirt, very suntanned, about six feet tall, and powerfully built. She said that she had several minutes to observe the robbers.

Ann Brumleve was also a teller on the day of the robbery. She testified that she had never seen any photos of the robbery. When asked if she could identify the robbers, she stated: "I don't know. I don't know. It's been five years. It's been a long time. I may be able to. I don't know."

Ellen Bramer was the last teller to testify. She had seen the surveillance photos at the time of the robbery and the day before the trial. She said that she could identify the men from memory. She described the larger man as six feet or little taller. He had sandy blonde hair, a little bit curly, was wearing a ball cap, sun-

glasses and had a bandage over his nose. At the time of the initial FBI investigation, she had described the taller robber as six feet to six feet two inches tall, 200–220 pounds, large, "barrel-chested, broad shoulders, thick neck, sandy blonde curly hair, several-day beard growth, blonde stubble, hairy chest and stomach, dark tan."

After considering these witnesses, the court denied the defense motions to prevent the in-court identification and to conduct a lineup prior to any in-court identification. All of the witnesses then proceeded to testify at the trial. Ellen Bramer was the only witness to identify Russell Hill positively as the taller robber. She did so by pointing to him, seated at the defense table. The tall robber had gone to Bramer's window and robbed her. Karen Summers identified Mercer as the other robber.

After the testimony, defense counsel pointed out to the jury that Russell Hill is five feet nine inches tall and currently has very dark straight hair. Following arguments and instructions, the jury retired to deliberate. The jury sent out two notes concerning Bramer's earlier description of Russell Hill and her in-court identification of him. The next day, the jury found both defendants guilty.

Hill argues on appeal that the district court erred when it allowed the bank teller to identify him in court. He further contends that, given the significant unreliability of Ann Hill's testimony, this was not a harmless error. Specifically, Hill urges this court to find that the district court committed reversible error when it denied the motion to suppress Ellen Bramer's in-court identification, or, in the alternative, to require a line-up or some other device insuring reliability prior to her in-court identification.

## II

Hill's basic argument is that allowing Bramer to identify him in court, over five years after the robbery, was a violation of his due process rights. The Supreme Court has held that due process requires exclusion of testimony of a pre-

trial identification when the identification procedures used were unnecessarily suggestive and thus conducive to mistaken identification that cannot be repaired. *Stovall v. Denno*, 388 U.S. 293, 301–02, 87 S.Ct. 1967, 1972–73, 18 L.Ed.2d 1199 (1967). In *Stovall*, the defendant was brought to the hospital bed of a witness two days after the offense. The witness was asked if "he was the man" and she identified him in the room and at trial as her assailant. The Court noted that the "practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned," *id.* at 302, 87 S.Ct. at 1972, but held that "a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances." *Ibid.* In deciding *Stovall*, the Court stressed the necessity of the procedure used in that case. The victim in the hospital was in very serious condition, and if that defendant were not the culprit then his chance for exoneration might be lost. The court found that the police followed the only possible procedure under the circumstances.

In *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the Court dealt with the case of an identification by a rape victim of a man at the police station without the benefit of a photopack. After reviewing the case law, the Supreme Court stated:

> It is the likelihood of misidentification which violates a defendant's right to due process.... Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous.

*Id.* at 198, 93 S.Ct. at 381–82. The Court held, however, that a court need not exclude testimony concerning an identification derived from unnecessarily suggestive procedures if the totality of the circumstances indicates that the evidence is reliable. *Id.* at 199, 93 S.Ct. at 382.

Therefore, the Supreme Court has prescribed a two-step analysis for determining the admissibility of identification evidence. First, a defendant bears the burden of proving the identification procedure was impermissibly suggestive. Second, if the defendant proves that the identification procedures were impermissibly suggestive, the trial court must determine whether, under the totality of the circumstances, the testimony was nevertheless reliable. In *Biggers*, the Court listed five factors that must be considered when evaluating reliability: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the defendant; (4) the witness's level of certainty when identifying the suspect at the confrontation; and (5) the length of time that has elapsed between the crime and the confrontation. *Id.* at 199–200, 93 S.Ct. at 382–83. If the defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification was otherwise reliable, then no due process violation has occurred. "As long as there is not a substantial likelihood of misidentification, it is the function of the jury to determine the ultimate weight to be given to the identification." *United States v. Causey*, 834 F.2d 1277, 1285 (6th Cir. 1987). The Court in *Biggers* held that there was no substantial likelihood of misidentification in the case, so the identification testimony was properly admissible.

In *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the Court reviewed a photographic show-up identification. The witness in that case was an undercover police officer who had been given a photograph of the defendant by another officer based on the witness's description of the defendant. At trial, and without objection, the undercover agent identified the defendant as the offender eight months after the incident and also testified to the photo identification. The Court discussed the merits of a per se suppression rule prohibiting admission of pretrial identifications based on show-up

identifications absent exigent circumstances. Ultimately, the Court adopted the totality of the circumstances test announced in *Biggers*, stating that "reliability is the linchpin in determining the admissibility of identification testimony." *Id.* at 114, 97 S.Ct. at 2253. The court held that the identification was admissible under the totality of the circumstances, noting that the photo identification took place only two days after the crime.

Hill argues that the identification in this case was extremely suggestive and bears none of the indicators of reliability. He relies on the Sixth Circuit case of *United States v. Russell*, 532 F.2d 1063 (6th Cir. 1976), which also involved an armed bank robbery and the testimony of three eyewitnesses. The court examined the significance of eyewitness testimony, stating that "[t]here is a great potential for misidentification when a witness identifies a stranger based solely upon a single brief observation, and this risk is increased when the observation was made at a time of stress or excitement." *Id.* at 1066. Hill points out that Bramer was the only teller to identify Russell Hill and she testified that she was terrified at the time of the robbery and had only a couple of minutes to observe the robber. She testified that during part of that time she was watching the gun aimed at her. The *Russell* court also stated that although eyewitness testimony is very susceptible to "post-experience suggestion" and frequently unreliable, it is very persuasive to juries: "This problem is important because of all the evidence that may be presented to the jury, a witness' in-court statement that 'he is the one' is probably the most dramatic and persuasive." *Id.* at 1067.

In *Thigpen v. Cory*, 804 F.2d 893 (6th Cir.1986), the court addressed suggestive pretrial encounters that were not the result of government action. In that case, the eyewitness was robbed by two men. He failed to identify one of the suspects, Willie Thigpen, at a pre-trial lineup nine hours after the crime. He saw him again at a pretrial hearing for the other man twelve days later. After seeing Thigpen a third time at the trial of the other man, the witness told police that Thigpen was the other robber. The court ruled that Thigpen was entitled to a writ of habeas corpus, stressing that the state court and the United States district court had erroneously relied on the lack of police misconduct or police machinations in causing the suggestive encounters. The appeals court held that "only the effects of, rather than the causes for, pre-identification encounters should be determinative of whether the confrontations were unduly suggestive." *Id.* at 895.

Appellant recognizes that all of these cases involved encounters prior to trial and not allegedly suggestive in-court identifications. Cases directly on point have been considered in other circuits. In *United States v. Archibald*, 734 F.2d 938 (2nd Cir. 1984), a bank robbery case, the defendant had been the subject of a photographic array which the court held was not impermissibly suggestive. The court also considered the in-court identification. Archibald had asked for a line-up prior to his in-court identification by a teller, but was denied. In reference to that ruling, the Second Circuit stated:

> We may agree with the court that there was no obligation to stage a lineup, but there was, however, an obligation to ensure that the in-court procedure here did not simply "amount[ ] to a 'show up.' "

*Id.* at 941 (citations omitted). The court held that the "in-court identification procedure utilized here was so clearly suggestive as to be impermissible, however traditional it may be." *Id.* at 942–43.

The Eighth Circuit also considered the issue in *United States v. Rundell*, 858 F.2d 425 (8th Cir.1988). That case involved a bank robbery in July 1987. Neither of the eyewitness tellers had participated in any pretrial identification procedure. The court stated:

> A due process challenge to an in-court identification therefore requires a two-step determination: whether the challenged confrontation was impermissibly suggestive and, if so, whether the identification was nonetheless reliable under the totality of the circumstances.

*Id.* at 426 (applying *Neil v. Biggers*). The court admitted that the eyewitnesses' inherent knowledge that the person seated at counsel table was the defendant made the in-court identification impermissibly suggestive. However, the court held that the testimony was sufficiently reliable under the *Biggers* test to overcome any likelihood of misidentification created by the nature of a courtroom confrontation.

### III

Hill urges this court to apply the *Biggers* analysis to the in-court identification in this case. Hill further contends that the identification in this case was impermissibly suggestive and, further, that the totality of the circumstances makes the testimony unreliable. The government argues that the in-court identification was not unnecessarily suggestive and, even if it the court finds that it was, that the identification satisfies the *Biggers* factors of reliability. Hill argues that Bramer had only a couple of minutes to view a robber who was disguised with a ball cap, sunglasses, and a bandage on his nose. As far as the witness's degree of attention is concerned, appellant points out that this was a very terrifying experience and Bramer had a gun in her face the entire time. Further, Bramer's prior description is somewhat different from Russell Hill's current appearance. Finally, while Bramer did show reasonable certainty in her identification, the length of time between the crime and the identification is, in the eyes of the appellant, an insurmountable factor in this case.

■ The United States argues that the government is not required to conduct a lineup. However, the government is prohibited under the Due Process Clause from introducing the fruits of an impermissibly suggestive and inherently unreliable identification as evidence against the accused. In this case, the court had to make an *ex ante* determination of whether to allow a witness, who had never before positively identified the defendant in person, to make an identification in court. We hold that the *Biggers* analysis applies to such in-court identifications for the same reasons that

the analysis applies to impermissibly suggestive pre-trial identifications. The due process concerns are identical in both cases and any attempt to draw a line based on the time the allegedly suggestive identification technique takes place seems arbitrary. All of the concerns that underlie the *Biggers* analysis, including the degree of suggestiveness, the chance of mistake, and the threat to due process are no less applicable when the identification takes place for the first time at trial.

■ Although *Biggers* applies here, we find that the district court did not err when it allowed the bank teller to identify Russell Hill in court. The district court's decision was proper, given the two-step *Biggers* test for determining the admissibility of identification evidence. As discussed above, the first step of *Biggers* requires a defendant to prove that the identification procedure used was impermissibly suggestive. Only if the defendant meets this initial burden of proof must the court then go on to determine whether the identification was reliable given the totality of the circumstances, despite that fact that the identification procedure employed was impermissibly suggestive. The five *Biggers* factors govern the determination under this second part of the test.

We assume, without deciding, that for purposes of this case the in-court identification of Hill was impermissibly suggestive. Nevertheless, our close consideration of the five factors propounded in *Biggers* convinces us that the identification in this case was sufficiently reliable to allow its admission into evidence.

Bramer testified that Hill was the man who robbed her at the bank. She claims that she rarely turned her attention away from Hill because he was yelling at her constantly. Bramer's view of the robber she identified as Hill was unobstructed and he was no more than two or three feet away from her during most of the robbery. She stated specifically that Hill was leaning over her teller window and looking into her drawer. Surveillance photographs show that the bank was brightly illuminated during the robbery. The first two *Big-*

*gers* factors thus support the reliability of the identification since Bramer had a substantial opportunity to view the criminal at the time of the crime and her attention was riveted on the robber during most of the robbery.

The third *Biggers* factor focuses on the accuracy of the witness's prior identification of the defendant. Hill argues that there were significant discrepancies between his appearance and Bramer's prior description of the perpetrator. The prosecution submits Bramer's prior statements amount to only slight inaccuracies concerning Hill's height and hair color. After reviewing the record, we conclude that, with regard to the reliability of the identification, this factor is at worst ambiguous.

The fourth *Biggers* factor clearly supports the reliability of the identification. As stated above, this factor centers on the level of certainty exhibited by the witness at the confrontation. When asked at the suppression hearing whether she could identify the bank robber, Bramer responded: "Yes sir, I could ... I don't believe I'll ever forget it." Later, Bramer did not hesitate in identifying Hill as the man who robbed her. On cross-examination, Bramer confidently asserted that she could select Hill from a lineup of six or seven people. In short, Bramer was certain that Hill robbed the bank.

The fifth factor does detract somewhat from the reliability of Bramer's identification. Five years had passed between the robbery and the in-court identification. However, consideration of all of these factors taken together leads us to conclude that the identification in this case, regardless of whether it was impermissibly suggestive, was reliable enough to be admissible. As we noted above, reliability is the linchpin in determining whether an identification is admissible. Here, the identification was not so unreliable as to justify denying the jury the benefit of the additional evidence.

Since the identification was sufficiently reliable, the district court properly left it to the jury to decide what weight to ultimately give to the identification. The defense was free to attack the reliability of the identification vigorously and to present its arguments to the jury. In sum, the district court did not err when it refused to exclude the in-court identification of Hill and the government was not required to conduct a lineup prior to this identification. *Causey,* 834 F.2d at 1286.

IV

For the reasons given, we AFFIRM the judgment of the district court.

WELLFORD, Senior Circuit Judge, concurring:

I concur in Judge Boggs's well-reasoned opinion, but I do not assume, or conclude, that the in-court identification was unduly suggestive. I would AFFIRM for the other reasons stated.