NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0177n.06
Filed: March 7, 2005

No. 03-2295

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

TIMOTHY L. SOTO,

    Defendant-Appellant.

    ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

_____/

Before: MARTIN and BATCHELDER, Circuit Judges: JORDAN, Senior District Judge.[*]

LEON JORDAN, Senior District Judge. This action arises from the conviction based on a conditional guilty plea by Timothy Soto ("Soto") for assaulting a federal officer and possessing an unregistered firearm. Soto appeals the district court's denial of his motion to suppress certain incriminating evidence. For the following reasons, we **AFFIRM** the district court.

---

[*] The Honorable R. Leon Jordan, Senior United States District Judge for the Eastern District of Tennessee, sitting by designation.

I.

On November 4, 2002, the Detroit Police Department responded to a call that someone had assaulted a mail carrier by pointing a gun at him. The officers who responded, Gerald Packard and Manuel Gutierrez, interviewed the carrier, Ralph Kotoff, who described the assailant as being white, clean shaven, between 5'10" and 6' tall, with short hair, and weighing approximately 200 pounds. Two witnesses were also located and interviewed. They described the assailant as being a white male, approximately 5'8" tall, unshaven with short hair, wearing a dark jacket and jeans and someone who lived in the neighborhood.

On the following day, a confidential source informed Officer Packard that the person who had assaulted the mail carrier lived at 1066 Crawford Street in Detroit. The source described the suspect as an Hispanic male, around 5'9" tall, kind of stocky with lots of tattoos. Surveillance was established at the Crawford Street address by Officer Packard and several other officers. When a man and a woman left the residence, officers followed their car. A short distance from the house they pulled the couple over and questioned them. Several police vehicles were involved in the stop. The woman in the car was Soto's sister, Kristin Soto, who lived in the Crawford Street house. The man with Kristin Soto was her boyfriend, Aaron Stone.

Kristin Soto testified at the suppression hearing that there were four police vehicles

that surrounded the car on three sides and that the officers had their guns drawn. However, Officer Packard testified that the officers did not have their guns drawn and that the car was not surrounded when they approached Kristin Soto to question her. Kristin Soto told the officers that her brother, Timothy Soto, was in the house along with her young child. During this interview, Kristin Soto either gave a description of her brother that matched that of the suspect or responded to a description given by the officers by acknowledging that the description fit that of her brother.

Kristin Soto led the officers to the house. The couple rode in their car, and the officers followed. According to Officer Packard, Kristin Soto agreed to take them to the house and let them enter. Kristin Soto's testimony differs. She testified that she did not give the officers express permission to enter the house; rather they followed her when she walked inside. However, she admitted that at no time did she tell the officers not to enter or to wait outside. Once she entered the house, she retrieved her baby, took him to a neighbor for care, and returned to the house.

Kristin Soto also testified that she was not allowed to enter the house upon her return. Officer Packard testified, however, that she was allowed to return inside the house after taking her child out and that she stood in the foyer and was able to see her brother.

Upon entering the house, Officer Packard found Soto and determined that he fit the description of the suspect. He placed him under arrest and verbally gave him his rights. Soto

contends that he had been smoking marijuana and was still under its influence. According to Officer Packard, however, Soto did not appear to be under the influence of drugs or alcohol. Officer Gutierrez interviewed Soto at the dining room table and questioned him about the events of November 4 and about whether any firearms were in the house. Officer Gutierrez testified that he did not advise Soto of his rights before he questioned him at the house and did not know if anyone else had done so.

Kristin Soto signed a consent form allowing the officers to search the house. However, she testified that officers were looking around the house before she signed it. Officers Packard and Gutierrez testified that no search was conducted until the consent form had been signed. Kristin Soto also testified that she was under duress and that she did not voluntarily sign the form. She stated that Officer Packard told her that she could sign the form or they would obtain a search warrant, and if they had to get a warrant, they would tear her place apart when they returned.

In his questioning of Soto at the house, Officer Gutierrez learned that there was a shotgun hidden under the stairs in the basement. When the officers could not find the shotgun, Soto led them to it, a Harrington Richardson 410 single shot sawed-off shotgun with a 15 ½" barrel. This was not the gun involved in the assault on the postal worker. It was, however, the gun that led to the charge for possession of an unregistered firearm.

Soto was taken to police headquarters. When he was being taken out, he was allowed to hug his sister before leaving. At headquarters, Soto was read his rights by Officer

Gutierrez, and he signed a written acknowledgment of his advisement of rights after reading the form line by line. Officer Gutierrez had Soto read aloud the five rights statements on the interrogation form. Soto signed a written statement in which he admitted that he had waved a gun at the postal worker and a statement in which he admitted that he had purchased and owned the sawed-off shotgun found in the residence. Soto expressed having difficulty with reading, so for both statements, Officer Gutierrez read each question, wrote down Soto's answer, and then had Soto read them. The record reflects that Soto had attended high school and had reached the eleventh grade.

At the suppression hearing, Soto testified that he was unable to read and understand the forms that he signed. He claimed that he did not sign a waiver of rights before giving a statement to the police. Soto also testified that the forms he signed were represented to him as administrative materials that he needed to sign before he left the downtown station to be transported to another local precinct.

On November 6, 2002, a special agent from the Bureau of Alcohol, Tobacco and Firearms gave a photo array to the postal worker who had been assaulted. The photo array consisted of six photos with photo number 2 being of Soto. The postal worker identified Soto as the assailant. On appeal, Soto contends that his photo is much clearer than the others and it has a more obvious background. He also claims that his clothing is bright while the clothing worn by the other five men is dark.

## II.

On December 4, 2002, Soto was indicted by a federal grand jury for assaulting a federal officer in violation of 18 U.S.C. § 111(b) and for possessing an unregistered firearm in violation of 26 U.S.C. § 5861(d). Soto filed motions to suppress the statements he made after his arrest and the firearm that was seized from the house at the time of his arrest. He later filed a supplement to include suppression of the photo array. The district court held a hearing on the motions, and in an order from the bench, the district court denied all the suppression motions. Soto pled guilty to both counts in the indictment. At the plea hearing, the parties acknowledged that the guilty plea was conditional pursuant to Fed. R. Crim. P. 11(a)(2); that Soto's right to appeal the denial of his suppression motions was preserved; and that if he should be successful on appeal, he would be allowed to withdraw his guilty plea. Soto was sentenced to twenty-four months on each count to run concurrently.

## III.

When this court reviews a district court's denial of a motion to suppress evidence, we review the district court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Stewart*, 306 F.3d 295, 304 (6th Cir. 2002); *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000). "A factual finding is clearly erroneous where, although there

is evidence to support that finding, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Rodriguez*, 301 F.3d 666, 668 (6th Cir. 2002) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). Where a district court has denied a motion to suppress, "we consider the evidence 'in the light most favorable to the government.'" *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (*en banc*) (quoting *United States v. Wellman*, 185 F.3d 651, 654-55 (6th Cir. 1999)).

IV.

*Arrest of Soto*

Soto argues that the police did not have a warrant for his arrest and did not have consent to enter his sister's house where he was arrested. Therefore, he contends that the arrest without a warrant was in violation of the Fourth Amendment. He additionally argues that the officers lacked probable cause to make the arrest and that all the evidence and statements obtained subsequent to the arrest must be suppressed. The government contends that the district court was correct in its finding that Kristin Soto gave consent for the officers to enter her house and that the police had probable cause to arrest Soto after confirming that his appearance matched that of the description provided by witnesses.

We will first address the issue of whether the officers had consent to enter the house. It is a fundamental principle of Fourth Amendment law that entry into a home without a

warrant is presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586 (1980);

*Steagald v. United States,* 451 U.S. 204, 211 (1981). However, the Fourth Amendment's

prohibition on the warrantless search of a person's home does not apply when voluntary

consent has been obtained from the individual whose property is being searched. *United*

*States v. Gillis*, 358 F.3d 386, 390 (6th Cir. 2004) (citing *Illinois v. Rodriguez,* 497 U.S. 177,

181 (1990)). In order for a search based on consent to be valid, there must be a showing that

the consent was "freely and voluntarily given." *Bumper v. North Carolina*, 391 U.S. 543,

548 (1968). The government has the burden of proving that a valid consent was obtained and

"that the consent was uncontaminated by duress, coercion, or trickery." *United States v.*

*Jones*, 641 F.2d 425, 429 (6th Cir. 1981). "Whether consent was free and voluntary so as to

waive the warrant requirement of the Fourth Amendment is 'a question of fact to be

determined from the totality of all the circumstances.'" *Carter*, 378 F.3d at 587 (quoting

*Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)).

The district court stated the following regarding the issue of Kristin Soto's consent:

> I think with regard to the stopping of the car that Ms. Soto was in, I think,
> assuming there were multiple police cars on the side and in the back, that there
> wasn't one in the front. I credit the testimony of the officers. Officer Packard
> said that the guns were not drawn. Indeed, they allowed Ms. Soto to drive
> back on her own. They didn't put her in the police car, didn't put a police
> officer in her car, and I believe that she did voluntarily consent to allow for
> them to go into the house; that she had control of it, assuming that she had
> nothing to hide, I guess, but at any rate, I guess, she opened the door. They
> allowed her to take her son out of the house. They didn't force her to remain
> in the house with the son in a separate room. She was allowed access out of
> the house. So I think - - and I credit the consent form that she did consent to

search the house both in the form and circumstances around it.

At the suppression hearing, Kristin Soto testified about the conversation she had with the officer when her car was stopped. She stated:

> He said, where is your brother at, I said, well, my brother is at home with my son. And he was like, he asked me first where I lived and I said 1066 Crawford. He said, well, your house, there's officers at the back of your house and the front of your house, he was like, do you want to take us back there to get him. We need to speak to your brother. And I said, do I have a choice? And he was like, well, you can either take us there or we'll go there anyway. So I took him.

The district court made a factual determination that the officers were more credible witnesses than was Kristin Soto. Deference is given to the district court's credibility assessments because the district court "was in the best position to make such a determination." *United States v. Hill*, 195 F.3d 258, 264-65 (6th Cir. 1999). Credibility determinations "are generally not subject to reversal upon appellate review." *United States v. Taylor*, 956 F.2d 572, 576 (6th Cir. 1992) (*en banc*). "The appellate courts generally do not review the district court's determinations regarding witness credibility." *United States v. Gessa*, 57 F.3d 493, 496 (6th Cir. 1995).

It is apparent from the record that the district court considered the totality of the circumstances, weighed the evidence including the competing testimony of the police officers and Kristin Soto and determined that the officers' testimony should be credited. There is no basis to conclude that the district court's findings were clearly erroneous. Accordingly, we find that the district court's determination that consent to enter the house

was voluntarily given was not clearly erroneous.

We will next address the district court's finding that probable cause existed for the arrest of Soto. The officers did not have a warrant for Soto's arrest when they entered the house. "[A] warrantless arrest must be supported by the existence of probable cause of sufficient weight to support a belief that the *individual detained committed a criminal offense*." *United States v. McNeal*, 955 F.2d 1067, 1071 (6th Cir. 1992) (emphasis in original). An arrest without probable cause violates the Fourth Amendment. *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003).

Probable cause to arrest has been defined as "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). "[T]he existence of probable cause should be determined by the totality of the circumstances. This totality of the circumstances analysis includes a realistic assessment of the situation from a law enforcement officer's perspective." *United States v. Ferguson,* 8 F.3d 385, 392 (6th Cir. 1993) (citations omitted). "The probability of criminal activity is assessed under a reasonableness standard based on 'an examination of all facts and circumstances *within an officer's knowledge at the time of an arrest*.'" *Crockett*, 316 F.3d at 580 (quoting *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999) (emphasis in original).

On the issue of whether there was probable cause to arrest Soto, the district court found as follows:

> With regard to the question of probable cause to arrest Mr. Soto, the evidence indicates not just the description given by the victim and also by friends, or at least individuals who said they were with him on the day in question, but that ties to the evidence supplied by the confidential informant, who says the guy that you're looking for is at that address in - - at 1066 Crawford.

> So looking at the totality, it's not just someone who says someone is 5-8 or 5-9, light skin, and for the record the defendant does appear highly light skin[ned].

> With regard to the procedures, in totality you're not just looking at someone who has been described in a certain way, but someone who has been given a specific address location by an informant, who said - - with tying it together with regard to the matter dealing with the assault on the postal person. There was an individual, and he lives at this address. At that point there is an identification of this individual . . . .

> Given that the police were allowed access into the house and seeing Mr. Soto, I think that they could validate the information both of the reliable informant that he is in the house with their own visual that it does look like the person who was described by the victim, by the two friends, and also they could see him there. The they [sic] had probable cause to arrest Mr. Soto at that time.

We find that the district court was correct in deciding that probable cause existed for arresting Soto. The district court considered in totality the evidence before it: the description of the suspect given by the confidential informant and witnesses; the information from the confidential informant that the suspect lived at 1066 Crawford Street; and the officers' connection of that information when they saw that Soto fit the description given. In addition,

Kristin Soto either provided the officers with a description of her brother that fit the description provided by the informant and witnesses or she responded to a description given by the officers by indicating that the description fit her brother. With this information, a reasonable officer would have had probable cause to believe that Soto was the person being sought for the assault. The district court's determination that there was probable cause to arrest Soto was not clearly erroneous.

*Suppression of Incriminating Statements and Sawed-off Shotgun*

Soto contends that the district court erred in not suppressing the statements he made after his arrest. He contends the statement he gave the officers at the house telling them where the shotgun was hidden should be suppressed because he did not waive his rights prior to being questioned by the officers. He also contends that the written statement he made at the police station should be suppressed because he was coerced into making an involuntary confession while he was under the influence of marijuana and also because he is illiterate and could not read the contents of the statement.

It is well settled that "incriminating statements elicited from suspects in custody cannot be admitted at trial unless the suspect was first advised of his or her *Miranda* rights." *United States v. Salvo*, 133 F.3d 943, 948 (6th Cir. 1998) (citing *Stansbury v. California*, 511 U.S. 318, 322 (1994)). A defendant may waive his or her *Miranda* rights, but the waiver must be voluntary, knowing, and intelligent, based on the totality of the circumstances. *Moran v. Burbine,* 475 U.S. 412, 421 (1986). The government has the burden of proving by

a preponderance of the evidence that the waiver was voluntary; however, in order for the

waiver to be involuntary, there must be "an element of police coercion." *Seymour v. Walker*,

224 F.3d 542, 554 (6th Cir. 2000) (citing *Colorado v. Connelly*, 479 U.S. 157, 169-71

(1986)). "Only if the 'totality of the circumstances surrounding the interrogation' reveal both

an uncoerced choice and the requisite level of comprehension may a court properly conclude

that the *Miranda* rights have been waived." *Moran*, 475 U.S. at 421 (quoting *Fare v.*

*Michael C.*, 442 U.S. 707, 725 (1979)).

In connection with the issue of whether Soto orally received his rights at the house

before making the statement about the shotgun, the district court found as follows:

> With regard to Officer Packard, he testified that he orally gave him the rights, and I find that valid, and that Mr. Soto - - they looked for the gun having consent to enter the house, and looked through the house, and that he voluntarily took them down to where the gun was, and showed them the gun, and so that was not a violation of the Fourth Amendment with regard to getting - - seizing the gun.

. . . .

> Officer Gutierrez said that he came in the back door later, but the ultimate signing of the form which, you know, he was given the oral warnings, and that he did voluntarily show them in the house where the guns were.

> In fact, the testimony of Officer Gutierrez, you know, that they allowed the defendant, after they found the gun and they take him in to hug his sister on the way out, I think indicates that, again, it was not a coercive, threatening situation . . . .

At the suppression hearing, Officer Packard testified that he gave Soto his rights

orally. Soto, on the other hand, testified that he was not given his rights and he was under

the influence of marijuana at the time. However, there has been no showing that the district

court's factual findings concerning the events at the Crawford Street house were clearly

erroneous. The district court heard the testimony and was in the position to assess the

credibility of the witnesses. The district court gave credit to the officers' testimony, and in

so doing, found that Soto had been validly given his rights orally and that the scene at the

house was "not a coercive, threatening situation." As we stated earlier, credibility

assessments by the district court are given deference because the district court is in the best

position to make such determinations. *Hill*, 195 F.3d at 264-65. Accordingly, we find that

the district court's decision not to suppress Soto's statement concerning the location of the

shotgun was not clearly erroneous.

Concerning the issue of whether the written admission of guilt Soto gave at the police

station should have been suppressed, the district court found:

> With regard to the later matters at the police station, I think I accept the
> testimony of the officers that he was advised of his rights, and I don't accept
> his testimony that it was so dark when he signed the forms, he didn't know
> what he was signing, nor do I accept the fact that he did not understand. They
> read them to him, and that he signed them, and therefore, there was a valid
> waiver of his rights with regard to the statements, which are Government
> Exhibits 2, 3 and 4.

There is no indication in the record that this finding is clearly erroneous. While Soto

claimed he was under the influence of marijuana, he testified that he was able to care for his

nephew and that by the time he was at the police station and signed the papers the "highness" had worn off. The officers testified that Soto did not appear to be under the influence of alcohol or drugs on the afternoon of his arrest. Soto's claim that his cognitive or volitional ability was impaired by marijuana standing alone is insufficient to demonstrate that his confession of guilt was involuntary. *See United States v. Newman*, 889 F.2d 88, 94 (6th Cir. 1989). Coercion by law enforcement agents has to be the "crucial motivating factor" behind a defendant's decision to confess in order for the confession to be suppressed. *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988).

While Soto contends that because he is illiterate he was unable to understand what he was signing, the record indicates that he read out loud the five rights on the interrogation form and that though he had trouble reading, he had reached the eleventh grade in school. The record also reflects that Soto did in fact understand what he was signing. Officer Gutierrez testified that he read each question to Soto, wrote down Soto's answer, and had Soto read the statement to confirm that the answer was transcribed correctly.

The district court credited the officers' testimony on this issue, and the district court was in the position to assess each witness's credibility in determining what testimony to accept. Again, this court gives deference to such an assessment. *Hill*, 195 F.3d at 264-65. Nothing in the record indicates that the findings by the district court were clearly erroneous. We accordingly find that the district court was correct in not suppressing the written

admission of guilt given by Soto.

Soto also contends on appeal that the district court erred in not suppressing the evidence of the unregistered firearm, the sawed-off shotgun, that was seized during the search of the house. Soto argues that the shotgun should be excluded from evidence because it was taken during the warrantless search of the Crawford Street house. Kristin Soto's express consent to search the house validated the officers' warrantless search. "However, even when a search is authorized by consent, 'the scope of the search is limited by the terms of its authorization.'" *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 547 (6th Cir. 2003) (quoting *Walter v. United States*, 447 U.S. 649, 656 (1980)). The consent to search form Kristin Soto signed authorized the officers to search the premises and to seize firearms and ammunition.

The officers conducted the search within the scope of the authorization given by Kristin Soto. Officers Packard and Gutierrez testified that they did not begin to search until the consent was obtained. While Kristin Soto testified that she did not voluntarily consent to the search and that she was told that if the officers had to leave and get a search warrant, they would tear her place apart, the district court credited the officers' testimony and found that the consent was valid. The district court also found that Soto had been given his rights orally and that he voluntarily told them about and led them to the sawed-off shotgun. There is no showing that the district court's findings on this issue were clearly erroneous, and we accordingly find that the district court was correct in not suppressing the evidence of the sawed-off shotgun.

*Photographic Array*

The district court determined that the photo array was a fair depiction of the individuals such that Soto was not highlighted in any particular way, i.e., the array was not impermissibly suggestive. Soto argues on appeal that the photo array was overly suggestive because his photo is sharper and clearer than the others; the background of his photo is lighter than the others; and in his photo he is wearing a white shirt while all the others are in dark clothing.

A two-step analysis is used in determining whether identification evidence is admissible. *United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992). The first step requires the defendant to demonstrate that the photographic identification was impermissibly suggestive. *Id.* If the defendant meets this burden, the court must determine whether under the totality of the circumstances the testimony was nonetheless reliable. *Id.*

The district court found that the photographic array did not highlight Soto in any particular way. We agree. Nothing in the array causes Soto to stand out in comparison with the other individuals; rather, he looks substantially similar to the other men in the photos. As the district court noted, there are three or four light skinned individuals in the pictures, and the issue of facial hair was also fairly addressed. The district court observed that Soto looked clean shaven until he turned his head sideways to reveal his facial hair. There was no error by the district court in its finding that the photo array was not impermissibly suggestive.

For the foregoing reasons, we AFFIRM the decision of the district court.