COOK, Circuit Judge.
Frederick Grayer appeals the district court’s dismissal with prejudice of his petition for a writ of habeas corpus. Because the state court did not unreasonably apply clearly established federal law in deciding Grayer’s first three claims and because Grayer’s fourth claim, though unexhausted, lacks merit, the court affirms.
I
A Michigan jury convicted Grayer of the carjacking and armed robbery of an elderly woman in a Detroit parking lot. According to the victim, Grayer entered her car at knifepoint, causing her to flee, screaming for help. As the victim escaped, Jane Mencer — the key witness in the case against Grayer — entered the parking lot. Mencer pulled in front of Grayer, attempting to block his car with hers. Grayer, undeterred, went around her and sped off. Mencer gave chase for what she recalled to be “several miles,” for “five to seven minutes,” before pulling up next to Grayer at a red light. According to Mencer, she then observed Grayer’s face and profile for one to two minutes and even, at one point, yelled to him through their open windows, “I know what you did and you’re going to be caught, get out.” Mencer, realizing that she might be called to identify Grayer, carefully noted his facial features, body build, clothing, and overall appearance. Grayer then drove away and Mencer lost him when he drove onto a highway.
After Grayer’s arrest and sometime before trial, Mencer identified Grayer as the carjacker from two photos of Grayer a parole officer showed her. Mencer later observed a live lineup and in “a second” picked Grayer out from among four others as the carjacker. And at trial, she again pointed Grayer out as the carjacker, leading the jury to find Grayer guilty of carjacking and armed robbery.
Grayer appealed his convictions, raising three issues — the photo lineup Mencer viewed was unduly suggestive; the jury instruction concerning the photo lineup was erroneous; and his convictions for both carjacking and armed robbery constituted double jeopardy — all of which the Michigan Court of Appeals rejected. People v. Grayer, No. 217954, 2001 WL 740581 (Mich.Ct.App. Feb. 16, 2001) (per curiam). Grayer then applied for leave to appeal in the Michigan Supreme Court, which that court denied. People v. Grayer, 465 Mich. 890, 635 N.W.2d 319 (2001).
With his direct, state-court avenues closed, Grayer petitioned for federal habeas relief, raising the same three issues he raised before the Michigan state courts, plus an additional Brady claim. The district court dismissed the “mixed” petition, because Grayer had not exhausted his Brady claim in the state courts. Grayer again petitioned for federal habeas relief, *438 referencing the earlier district court decision and raising “only the issues exhausted by the state.” In his amended petition, he also arguably raised a new unexhausted malicious-prosecution claim, alleging that he “should have only been charged with Receiving and Concealing stolen property.” The district court considered his three exhausted arguments and rejected them. The district court, however, failed to address Grayer’s malicious-prosecution claim. The Sixth Circuit granted a certificate of appealability for all four claims.
II
Under the Antiterrorism and Effective Death Penalty Act (“AEDPA”), courts review a district court’s legal conclusions de novo and its factual findings for clear error. Vincent v. Seabold, 226 F.3d 681, 684 (6th Cir.2000). We will not grant a writ of habeas corpus unless we conclude that the state court’s decision: “(1) was contrary to, or involved an unreasonable application of, clearly established Federal law ... or (2) was based on an unreasonable determination of the facts.... ” Armstrong v. Morgan, 372 F.3d 778, 781 (6th Cir.2004) (internal quotations and citation omitted).
A. Photo Display
Grayer claims the photos shown to Mencer for purposes of identifying the carjacking suspect[2] were unduly suggestive, such that they violated his federal due-process rights. See Carter v. Bell, 218 F.3d 581, 605 (6th Cir.2000). The Michigan Court of Appeals rejected this argument, holding that even though the photos were suggestive, the totality of the circumstances showed the identification to be reliable. Grayer, 2001 WL 740581, at *2-3. There appears nothing unreasonable concerning the state court’s analysis of the facts of this case and its application of Supreme Court precedent.
In reviewing a due-process claim involving an identification procedure, the Supreme Court has adopted a two-part test: (1) the defendant must show the identification procedure was impermissibly suggestive; and (2) if the procedure was suggestive, the court examines the totality of the circumstances to determine whether the identification was nonetheless reliable. United States v. Hill, 967 F.2d 226, 230 (6th Cir.1992) (synthesizing Supreme Court precedent). In examining the totality of the circumstances, this court considers several factors, including: “(1) the witness’s opportunity to view the criminal at the time of the crime; (2) the witness’s degree of attention at the time of the crime; (3) the accuracy of the witness’s prior description of the defendant; (4) the witness’s level of certainty when identifying the suspect at the confrontation; and (5) the length of time that has elapsed between the crime and the confrontation.” Id. (citing Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)).
Here, the Michigan Court of Appeals found the familiar Biggers factors demonstrated reliability. That is, Mencer examined Grayer’s face for one to two minutes as their cars sat side by side, making a “deliberate effort to observe and remember the description of the driver and his clothing.” Grayer, 2001 WL 740581, at *2. Mencer consistently described Grayer throughout the proceedings, even articulating “differences that she noticed between defendant’s appear *439 ance in the photographs, the live lineup, and in court.” Id. at *3. And a police officer testified that Mencer “was quite adamant” that she could identify Grayer at the live lineup and then did so without hesitation. Id.
The state court’s application of the Riggers factors is not unreasonable, as at least the first, second, fourth, and fifth factors clearly demonstrate a reliable and independent identification.[3] See United States v. Meyer, 359 F.3d 820, 825-26 (6th Cir. 2004) (finding weight of first, second, and fourth factors demonstrated reliable identification). Concerning factor one, Mencer had the opportunity to view Grayer’s profile and face for one to two minutes at the red light. See Hill, 967 F.2d at 232-33 (finding “a couple of minutes” a sufficient opportunity to view the suspect); Meyer, 359 F.3d at 825 (finding two to four minutes a sufficient opportunity). Given that during those two minutes, Mencer and Grayer’s cars sat next to each other in daylight hours — with the windows open, with Mencer’s larger Grand Prix allowing her to look down into Grayer’s smaller Dodge Neon (allowing a vantage to view both his face and body), and with Grayer turning his face to Mencer when she spoke to him — Grayer fails to overcome the presumption of factual correctness AEDPA supplies to the court’s reliability determination.
The concurrence thinks otherwise, finding the “time of day, the ability to see only the carj acker’s profile except for a short frontal view, the distance between the cars, the need to view through another car,” all weigh against Mencer’s opportunity to observe Grayer. Though the concurrence rightly defers to the state court, under AEDPA, on the ultimate question of whether Mencer’s identification was reliable, it largely abandons AEDPA’s presumption of factual correctness when assessing Mencer’s testimony. That is, under AEDPA, courts presume that factual findings made by the state court are correct, unless the petitioner produces clear and convincing evidence to rebut that presumption. 28 U.S.C. § 2254(e)(1). And when assessing witness credibility, our review becomes even more deferential, as appellate courts are in no position to second guess credibility findings made by the trier-of-fact. See Seymour v. Walker, 224 F.3d 542, 551-52 (6th Cir .2000).
The concurrence, however, resists the § 2254(e)(1) presumption by positing alternatives. For instance, Mencer testified that, though it was 7:45 PM, it was still daylight when she observed Grayer. Yet the concurring opinion, by expressly finding the time of day as hindering Mencer’s ability to view Grayer, seems to challenge that testimony without any support from the record. Likewise, though Mencer testified that her car sat higher than Grayer’s Neon, allowing her to see Grayer’s body and clothing, the concurring opinion devalues that testimony as “implausible” by assuming the two sedans sat at the same height.
The concurrence also posits that Mencer, for most of the chase, “at best,” could see the back of Grayer’s head. Mencer, however, testified that she was able to *440 view Grayer’s face, not only at the red light, but while in pursuit, as their cars drove side by side for a part of the chase.[4] Again, the concurring opinion takes issue with Mencer’s testimony, though the trial court labeled her as “very credible”. Without any clear and convincing evidence presented by Grayer or found in the record, ADEPA review disregards such credibility second-guessing at the appellate level.
Though limited in duration, the opportunity to identify Grayer was, according to the record before us, excellent given Mencer’s steadiness under the circumstances together with her heightened degree of attention — considerations relevant under the second Biggers factor. According to Mencer, she carefully noted Grayer’s face, body build, and overall appearance for the very purpose of identifying him for police. See Ledbetter v. Edwards, 35 F.3d 1062, 1072-73 (6th Cir.1994) (finding reliable identification where witness “devoted her full attention to [suspect’s] face as she stared at it from very close range”); Howard v. Bouchard, 405 F.3d 459, 473 (6th Cir.2005) (noting that an interested witness’s observation tends to be more reliable than that of a disinterested bystander). Mencer even testified at one point during the proceedings that her father had taught her, as a safety measure, to identify people by observing their noses and eyes — a faculty she relied upon in observing Grayer. See Miles v. Jabe, No. 90-1659, 1991 WL 43915, at *4 (6th Cir. Apr. 1, 1991) (per curiam) (considering dentist’s training in observing facial features).
And Mencer seemingly did not suffer from fear or stress during this incident, as crime victims and witnesses often do. See United States v. Russell, 532 F.2d 1063, 1066 (6th Cir.1976) (noting the potential for a misidentification where observation was made “at a time of stress or excitement”). Rather, Mencer seemed unfazed by Grayer, so much so that she chased Grayer and then, as their cars sat side by side, even spoke to Grayer, informing him that she had witnessed the carjacking and urging him to pull over.[5] Mencer’s focused attention during the incident buttresses the judgment to credit her identification of Grayer as reliable.
Under Biggers factor four, Mencer never wavered in identifying Grayer throughout the proceedings. She testified that her identification of him at the live lineup was made independently of the photo array, as Grayer’s facial appearance had significantly changed by the time of the live lineup — he had more hair and facial hair— and thus the photos did not aid her at the live lineup. Yet even with Grayer’s different facial appearance from that of the photos, Mencer, without hesitating, picked him *441 out of the live lineup. See Ledbetter, 35 F.3d at 1072-73 (witness noted differences in facial hair between two arrays and quickly and accurately identified suspect at second array).
And under factor five, the length of time between Mencer’s initial observation and her later identifications of Grayer was not so long as to create a risk of an erroneous identification. Mencer viewed the photos about a month after the incident; she viewed the five lineup another month later; and she identified Grayer in court about a year after the carjacking. Courts have found similar time lines as not creating a risk of misidentification under Biggers factor five. See, e.g., Howard, 405 F.3d at 473 (three months between initial observation and first identification). See also Hill, 967 F.2d at 233 (five-year delay did not render identification unreliable in light of totality of the circumstances); United States v. Hmeidan, No. 97-3291, 1998 WL 553154, at *3 (6th Cir. Aug. 20, 1998) (per curiam) (three-year delay between observation and in-court identification permissible where witness expressed certainty throughout proceedings).
Our independent analysis of the Biggers factors here leads us to conclude that the Michigan court did not unreasonably apply them in deeming Mencer’s identification reliable.
B. Jury Instruction
Grayer next contends the trial court erred in instructing the jury concerning Mencer’s photo identification: “I’m instructing you that that procedure is permissible under Michigan law.” According to Grayer, that instruction “so infected the entire trial that the resulting conviction violate[d] due process.”
The state appellate court reviewed this claim for plain error, as Grayer failed to object to the instruction at trial. The court found error — the photo array, though not offending due process, violated Michigan law, which requires counsel’s presence at the photographic lineup when a defendant is in custody, see People v. Kurylczyk, 443 Mich. 289, 505 N.W.2d 528, 534 (1993) — but no prejudice “because the jury retained its ability to assess the reliability and accuracy of the witness’ subsequent identifications.” Grayer, 2001 WL 740581, at *4.
Grayer’s claim is procedurally defaulted in light of the state court’s failure to notice the plain error. A procedural default occurs when a state procedure bars a petitioner’s claim and the state court “clearly and expressly” relied on that bar. Harris v. Reed, 489 U.S. 255, 263, 109 S.Ct. 1038,103 L.Ed.2d 308 (1989). Under Michigan law, failure to make a contemporaneous objection serves as an independent and adequate state-law bar. People v. Kennebrew, 220 Mich.App. 601, 560 N.W.2d 354, 357-58 (1996). And a court’s decision to not review such a claim, for lack of plain error, amounts to the enforcement of that procedural bar. Hinkle v. Randle, 271 F.3d 239, 244 (6th Cir.2001) (“[W]e view a state appellate court’s review for plain error as the enforcement of a procedural default.”) Thus, the state court’s express finding of no plain error, due to Grayer’s failure to demonstrate prejudice, serves here as a procedural bar to Grayer’s jury-instruction claim.
The district court, however, declined to find procedural default, reasoning that the Michigan court “found the trial court’s instruction constituted plain error and went on to consider the effect of the error upon the Petitioner’s trial.” In other words, according to the district court, the state court’s prejudice analysis amounted to a consideration of Grayer’s claim on the merits.
*442 That decision is premised on a misreading of the state court’s opinion. The Michigan court’s analysis of the error’s impact on the trial was part of its plain-error review. Under Michigan law, as under federal law, prejudice comprises part of the plain-error test. See People v. Carines, 460 Mich. 750, 597 N.W.2d 130, 138-39 (1999) (adopting Olano standard, which requires a showing of prejudice). Indeed, the state court began its analysis by noting that “the defendant must demonstrate plain error that was prejudicial, i.e., that could have affected the outcome of the trial.” Grayer, 2001 WL 740581, at *3 (emphasis added). The state court then “clearly and expressly” rejected Grayer’s claim under the plain-error standard, citing two Michigan plain-error cases and holding that his “substantial rights” were not affected and the “error was not so prejudicial that it affected the outcome of the trial.” Id. at *4. This resulted in procedural default, and Grayer has not demonstrated any cause or prejudice to excuse the default. See United States v. Saro, 24 F.3d 283, 287 (D.C.Cir.1994) (“The Supreme Court has declared that the showing of ‘prejudice’ necessary under the ‘cause and prejudice’ standard of habeas law ‘is significantly greater’ than that necessary under the plain-error doctrine.”) (citing Murray v. Carrier, 477 U.S. 478, 494, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)).
C. Double Jeopardy
Grayer contends that carjacking and armed robbery constitute the “same offense” and thus his conviction for both crimes amounts to double jeopardy. He claims that the two crimes contain identical elements and, in this case, concerned the same conduct — Grayer’s theft of the car. The Michigan Court of Appeals rejected this argument, finding that under Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the two offenses each contain a different element, thereby eliminating any double jeopardy problem. Further, the court found that because the Michigan legislature intended cumulative punishment for the same offense under two different statutes, no double jeopardy violation occurred.
Nothing unreasonable is evident in the Michigan court’s application of Supreme Court precedent in assessing this claim. The Supreme Court holds “where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.” Blockburger, 284 U.S. at 304, 52 S.Ct. 180. Under the Blockburger test then, if each offense contains a different element, no double jeopardy violation arises. Brown v. Ohio, 432 U.S. 161, 166, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).
Evaluating carjacking under Mich. Comp. Laws § 750.529a and armed robbery under § 750.529, Grayer’s conviction of both offenses does not result in double jeopardy because carjacking requires a motor vehicle as the object, while armed robbery does not, and armed robbery requires use of a dangerous weapon, while carjacking does not.[6] Michigan courts have, in fact, rejected this precise claim *443 many times;[7] the Michigan court here correctly followed suit.
D. Malicious Prosecution
Grayer arguably raised a malicious-prosecution claim in his habeas petition, alleging that he “should have only been charged with Receiving and Concealing stolen property.” Liberally construing this allegation, Grayer seems to argue that the prosecutor violated his constitutional rights by overcharging him for carjacking and armed robbery. Grayer, however, failed to exhaust this claim in the Michigan state courts. Nonetheless, rather than remand this case and order dismissal on the ground that Grayer filed a mixed petition, see Rose v. Lundy, 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), this court considers and rejects this argument on the merits, see 28 U.S.C. § 2254(b)(2) (1996).
To establish a constitutional violation for malicious prosecution, Grayer must demonstrate, at a minimum, a lack of probable cause for the state to prosecute him for carjacking and armed robbery. See Darrah v. City of Oak Park, 255 F.3d 301, 312 (6th Cir.2001). Because the jury convicted Grayer of both offenses, probable cause clearly supported the charges. See Stanley v. City of Norton, 124 Fed. Appx. 305, 310 (6th Cir.2005) (finding probable cause, established by grand jury indictment, defeated malicious-prosecution claim). Thus, his claim fails on the merits.
III
We affirm.

. A parole officer testified that she showed Mencer two photos of Grayer. Mencer, however, testified that the officer showed her three or four photos, including two of Grayer. See Grayer, 2001 WL 740581, at *1. The state court and district court accepted the parole officer’s description of the array — the more suggestive of the two.

. This is not to say that factor three necessarily weighs against the reliability of the identification. Under factor three, courts consider the accuracy of the witness's observation. Here, Mencer’s description of Grayer suffered from only minor discrepancies — for instance, she testified that he was 5'9"-5'10" tall, when, in fact, Grayer stands at 5'6". Such a difference, however, does not necessarily render an identification unreliable. See, e.g., Walton v. Lane, 852 F.2d 268, 274 (7th Cir.1988) (discounting minor differences concerning suspect's weight and height in assessing accuracy of identification).

. At the Wade hearing, the prosecutor asked Mencer: "And so you got a full face view of Mr. Grayer for approximately how long?” She replied: “For at the light it was two or three minutes but prior to that I when I come up to him when he was trying to go out the thing I looked at him also.” And Mencer testified, "I was side by side from almost from the time we were going up on Schoolcraft to my right to Evergreen.”

. The concurrence, on the other hand, describes Mencer as "somewhat agitated” during the chase, because "she was yelling at others during the pursuit and hollering at the caijacker while they were stopped at the red light.” Mencer screamed not in fear or in a way that might distract her — she yelled to get Grayer's attention and to urge him to pull over. The trial court properly assessed Mencer’s demeanor — "She was an eye witness and she took it upon herself freely and voluntarily to go chasing after this person. And that I think does away with the emotions that might cause for misperception. She obviously didn't feel threatened because if she did she wouldn’t have been doing what she was doing.”

. Armed robbery sometimes requires proof of a motor vehicle, when, of course, the object stolen is the motor vehicle. In this case, however, the state charged Grayer with armed robbery for stealing the victim's purse and cell phone, not the car. See Grayer, 2001 WL 740581, at *5 n. 4 (“The prosecution amended the information at the end of trial to identify the purse and cell phone as the property forming the basis of the armed robbery conviction.”).

. See, e.g., People v. Parker, 230 Mich.App. 337, 584 N.W.2d 336, 340 (1998); People v. Henderson, No. 250156, 2005 WL 321004, at *2 (Mich.Ct.App. Feb. 10, 2005) (per curiam); People v. Lollio, No. 241431, 2003 WL 22399294, at *2 (Mich.Ct.App. Oct. 21, 2003) (per curiam); People v. Sims, No. 234934, 2002 WL 31380801 (Mich.Ct.App. Oct. 22, 2002) (per curiam).