NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0118n.06

No. 09-3588

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

**FILED**
Feb 17, 2011
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ANTHONY D. PETERSON,

    Defendant-Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

_____/

Before:     MARTIN, BOGGS, and COOK, Circuit Judges.

BOYCE F. MARTIN, JR., Circuit Judge. Defendant-Appellant Anthony D. Peterson appeals his conviction for armed bank robbery. He makes three claims on appeal: (1) his statutory and constitutional rights to a speedy trial were violated; (2) the district court's consideration of erroneous evidence at sentencing requires a new sentencing proceeding; and (3) the district court erred in denying his motion to suppress a pre-trial identification. Because these claims are not meritorious, we **AFFIRM** Peterson's conviction and sentence.

**I. BACKGROUND**

On July 7, 2006, Peterson robbed the National City Bank in Springboro, Ohio. During the course of an investigation, Tonya Bowman, a manager who observed the robbery, identified Peterson as the robber from an array of six photographs.

A federal complaint was filed and an arrest warrant was issued on July 19. At this time, Peterson was being held by the Butler County Sheriff's Office on an unrelated state robbery charge. The United States Marshals Service placed a federal detainer in his state file. On or around December 6, Peterson was transported to the Ohio Department of Corrections. In early January 2007, he was transferred to the Southern Ohio Correctional Facility, a state facility. On January 3, Peterson sent a "kite," or a piece of written correspondence, to the Records Office of the Southern Ohio Correctional Facility to determine the status of any federal charges against him. The Records Office responded that there was nothing in his file about a detainer. Although the federal detainer had been issued to the Butler County Sheriff's Office, it was apparently not transmitted to the Ohio Department of Corrections with Peterson's other paperwork.

On October 17, a federal grand jury indicted Peterson for one count of armed bank robbery in violation of 18 U.S.C. § 2113 (Count 1), and one count of possession of a firearm during and in relation to the bank robbery in violation of 18 U.S.C. § 924(c) (Count 2).

After Peterson learned of the new federal detainer, he submitted another kite to the Records Office on October 30 requesting a speedy trial. The Records Office responded that it could not file for a speedy trial because the United States Marshals detainer was not accompanied by the necessary paperwork, and recommended that Peterson follow up with the Marshals Service. Peterson sent the Records Office another kite on November 2, and the Records Office again responded that it could not file for him without the necessary paperwork.

On February 27, 2008, Peterson filed a motion to dismiss based on speedy trial violations. The district court denied this motion. On April 11, Peterson filed a motion to suppress Bowman's pre-trial identification. The district court denied this motion as well.

On November 10, Peterson appeared in court, waived his right to a jury trial, and agreed to stipulate to the facts concerning the bank robbery. However, he denied that he had used an actual firearm in commission of the robbery. The district court held a bench trial on January 26, 2009. The United States dismissed Count 2 of the indictment. The district court accepted Peterson's stipulation and found him guilty of Count 1. The district court held a sentencing hearing on May 4, where the United States and Peterson argued whether a weapon that Peterson had used in a prior robbery was an actual firearm. The district court sentenced Peterson to eighteen years and six months of imprisonment to be served concurrently with his state robbery sentence, followed by five years supervised release, and $2,977 in restitution.

## II. SPEEDY TRIAL CLAIMS

Peterson claims that the United States violated two of his constitutional rights: his Fifth Amendment right against excessive pre-indictment delay and his Sixth Amendment right to a speedy trial. In addition, he claims that the United States violated several provisions of the Speedy Trial Act. In ruling on a constitutional speedy trial claim, "we review questions of law de novo, and questions of fact under the clearly erroneous standard." *Maples v. Stegall*, 427 F.3d 1020, 1025 (6th Cir. 2005). Similarly, we review "the district court's interpretation of the Speedy Trial Act de novo and its factual findings for clear error." *United States v. Tinklenberg*, 579 F.3d 589, 593 (6th Cir. 2009 (emphasis omitted) (internal quotation marks and citation omitted), *cert. granted*, 131 S. Ct.

62 (U.S. Sept. 28, 2010) (No. 09-1498). The standard of review regarding claims made for the first time on appeal is plain error. *See United States v. Olano*, 507 U.S. 725, 732-36 (1993).

## A. Constitutional Claims

## 1. Fifth Amendment Right Against Excessive Pre-Indictment Delay

"[T]he Due Process Clause of the Fifth Amendment protects against oppressive pre-indictment delay." *United States v. Schaffer*, 586 F.3d 414, 424 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 1921 (2010). However, we have held that "dismissal for pre-indictment delay is warranted only when the defendant shows substantial prejudice to his right to a fair trial and that the delay was an intentional device by the government to gain a tactical advantage." *Id.* (internal quotation marks and citation omitted). The United States Attorney's Office filed a criminal complaint against Peterson on July 19, 2006, and the grand jury indicted him on October 17, 2007, resulting in a pre-indictment delay of approximately one year and three months. However, on the record before us, Peterson has failed to demonstrate substantial prejudice to his right to a fair trial. Peterson has stipulated that he robbed the Bank and thus waived any claim that the delay prejudiced his ability to establish an alibi through video surveillance, or any other evidence that might have disappeared during the delay. Furthermore, Peterson cannot claim excessive pre-indictment incarceration because he was being held in state custody on an unrelated charge during the time period between the federal complaint and indictment.

Although Peterson's failure to demonstrate prejudice makes it unnecessary for us to reach the issue of whether he established that the delay was an intentional device by the United States to

gain a tactical advantage, *see id.* at 425, Peterson has failed to make this showing as well. Thus, we hold that Peterson is not entitled to dismissal of the indictment for excessive pre-indictment delay under the Fifth Amendment.

## 2. Sixth Amendment Right to a Speedy Trial

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The Supreme Court has articulated four factors that courts must consider in determining whether the right to a speedy trial has been violated: (1) whether the delay was uncommonly long; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether prejudice resulted to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

"The first [*Barker*] factor is a threshold requirement, and if the delay is not uncommonly long, judicial examination ceases. A delay approaching one year is presumptively prejudicial." *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006) (citation omitted). "The length of the delay is measured from the date of the indictment or the date of the arrest, whichever is earlier." *Maples*, 427 F.3d at 1026. Peterson was never arrested by federal authorities. He was indicted on October 17, 2007, and his trial was held on January 26, 2009, resulting in a delay of approximately one year and three months. Because this period meets the "uncommonly long" standard, we proceed to examine the three other factors.

The second *Barker* factor is the reason for the delay. "Governmental delays motivated by bad faith, harassment, or attempts to seek a tactical advantage weigh heavily against the government, while neutral reasons such as negligence are weighted less heavily, and valid reasons for a delay

weigh in favor of the government." *Robinson*, 455 F.3d at 607. The district court correctly found

that the United States's delay leading up to Peterson's motion to dismiss was not motivated by bad

faith, harassment, or attempts to seek a tactical advantage. Rather, much of this delay was caused

by the failure of state law enforcement to include the federal detainer with Peterson's paperwork sent

from the Butler County Sheriff's Office to the Ohio Department of Corrections. Furthermore, there

is evidence that Peterson was aware of the indictment because he twice requested the paperwork for

a speedy trial, but he failed to follow up with the United States as instructed. The district court

correctly found that because the delay was due to negligence and both parties shared blame for the

delay, the second *Barker* factor should be given neutral weight.

Much of the delay following Peterson's motion to dismiss was due to legitimate motions

made by both parties. Peterson filed a motion to suppress his own statement, a motion to suppress

the witness identification, a motion to compel discovery, and two motions to continue. The United

States filed an application for a search warrant, a motion to continue the trial date to have time to

receive forensic results from the laboratory, a motion to compel, and a motion for discovery. These

valid reasons for delay weigh in favor of the United States. *See id.* Although Peterson claims that

the United States was at fault for discovery delays, a review of the record reveals that the district

court issued an order granting Peterson a right to certain materials on July 23, 2008, and the United

States provided these materials between August 14 and September 3.[1] The United States's possible

delay of less than two months in providing discovery materials does not weigh strongly in favor of

---

[1]Peterson claims in his briefs that the United States did not provide the requested information to him until September 3, 2008. However, in his Motion For Continuance of Trial, filed on August 22, 2008, Peterson states that he received the DNA testing documentation on August 14, 2008.

Peterson. Thus, on balance, the second *Barker* factor is at best neutral and may even weigh against Peterson.

"The third *Barker* factor, defendant's assertion of his speedy trial rights, requires proof by the government that the defendant had knowledge of the federal charges. Where it is shown that the defendant was aware of the charges against him, then this factor weighs heavily against the defendant." *Id.* at 608 (citation omitted). The district court correctly noted that Peterson's inquiry into whether he had a federal detainer indicates that even if he did not have actual knowledge of the complaint that was filed against him, he was at least suspicious. Although Peterson made additional requests after he learned of the indictment, he should have been aware that these requests were ineffective because he had been informed that the proper paperwork did not accompany the detainer. Thus, the third *Barker* factor is neutral or weighs against Peterson.

"The final *Barker* factor requires the defendant to show that substantial prejudice has resulted from the delay." *Id.* (internal quotation marks and citation omitted). Peterson argues that he was prejudiced because the delay prevented him from obtaining security tapes from a casino that would verify his alibi and damaged his ability to prove that the weapon involved was a paint ball gun. However, the district court correctly noted that Peterson's claim is speculative because there is no evidence that the video surveillance from the casinos would have been more available if the indictment had come sooner. *Cf. id.* at 608-09. Also, the district court gave Peterson the benefit of the doubt that the weapon involved was an air pistol. Furthermore, Peterson has since stipulated that he robbed the Bank. Therefore, there is no alibi to establish and he has waived any argument that

delay in his trial prejudiced his ability to establish an alibi. Thus, the fourth *Barker* factor weighs against Peterson.

Although the delay of one year and three months between Peterson's trial is presumptively prejudicial, all of the other *Barker* factors are neutral or weigh against Peterson. Accordingly, we conclude that Peterson was not denied his Sixth Amendment right to a speedy trial.

**B. Statutory Claims**

**1. 18 U.S.C. § 3161(c)(1)**

The Speedy Trial Act requires that a defendant be brought to trial within seventy days of his indictment or initial appearance in court, whichever is last. 18 U.S.C. § 3161(c)(1). The Act also permits certain exclusions from the time computation. *Id.* § 3161(h).

Peterson has waived any claim for Speedy Trial Act violations later than February 27, 2008, the date he filed his motion to dismiss. *See United States v. Tinson*, 23 F.3d 1010, 1012-13 (6th Cir. 1994) (holding that the right to challenge any delay following a motion to dismiss is waived absent a new motion to dismiss). Fewer than seventy days passed between Peterson's initial appearance, January 30, 2008, and his motion to dismiss, February 27, 2008. Thus, Peterson's Speedy Trial Act rights under section 3161(c)(1) were not violated. It is therefore unnecessary to address Peterson's argument that the district court improperly excluded certain periods of delay because it did not make adequate findings of fact in the record to support those continuances.

**2. 18 U.S.C. § 3161(b)**

The Speedy Trial Act also provides that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which

such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). The Speedy Trial Implementation Plan of the Southern District of Ohio, Section II, provides that the thirty-day period begins when the "person (i) is held in custody solely for the purpose of responding to a *federal charge*; (ii) is delivered to the custody of a federal officer in connection with a *federal charge*; (iii) is before a judicial officer in connection with a *federal charge*." *United States v. Alfarano*, 706 F.2d 739, 741 (6th Cir. 1983) (internal quotation marks omitted). Although an arrest warrant for Peterson was issued on July 19, 2006, Peterson has failed to prove that any of these three circumstances triggered the thirty-day period. Furthermore, we have held that "[t]he evil against which the Act is meant to protect is the extension of the period when the accused is under legal restraint but does not know the charges she will eventually face; where no legal restraint exists, the thirty-day limit is inapplicable." *United States v. DeJohn*, 368 F.3d 533, 539 (6th Cir. 2004). Here, the federal charge imposed no legal restraint on Peterson because he was already in state custody on separate state charges. Thus, section 3161(b) was not violated. *Cf. United States v. Thomas*, 55 F.3d 144, 148 (4th Cir. 1995) (holding that the Speedy Trial Act was not implicated until defendant, who was in state custody at the time a federal complaint, arrest warrant, and detainer were filed, was taken into federal custody or indicted on federal charges).

### 3. 18 U.S.C. § 3161(j)(1)

The Speedy Trial Act provides that if the attorney for the United States knows that a person charged with an offense is serving a term of imprisonment at a penal institution, then the attorney must promptly obtain the prisoner's presence for trial or cause a detainer to be filed with the person who has custody of the prisoner and request him to advise the prisoner of his right to demand trial.

18 U.S.C. § 3161(j)(1). The Interstate Agreement on Detainers similarly provides that the official with custody of the prisoner must promptly inform the prisoner "of any detainer lodged against him" and "of his right to make a request for final disposition of the indictment, information, or complaint." *Id.* app. 2, § 2, art. III(c). The district court correctly found that even if section 3161(j)(1) were violated, dismissal of an indictment is not an appropriate remedy. *See Robinson*, 455 F.3d at 606. Furthermore, although Peterson argues that we can consider the United States's failure to comply with section 3161(j)(1) in determining whether a dismissal is appropriate under any of the reasons stated above, we have found no other violations of the Speedy Trial Act. Thus, we decline to dismiss Peterson's indictment on this ground.

### III. SENTENCING CLAIM

Peterson argues that because the United States introduced erroneous evidence in support of the sentence imposed in this case, we must remand the matter for resentencing. We "review a district court's sentencing determinations for abuse of discretion." *United States v. Rosenbaum*, 585 F.3d 259, 266 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 1115 (2010).

At sentencing, the district court gave Peterson the benefit of the determination that the weapon he used during the bank robbery was an air pistol rather than a firearm. The United States claimed that it possessed photographs showing that Peterson had used an actual firearm in a prior check-cashing robbery. The United States later admitted that this was incorrect, and that it had no photographs of the check-cashing robbery.

However, the district court stated that the United States's discussion of Peterson's past conduct did not affect his sentence:

Well, I mean, I will say for the record right now and for anybody that chooses to read this later, I did not rely in my sentence in any way, shape or form on [the United States's] discussion of his past conduct. I was looking at this conduct, the fact that it came on the heels of another robbery, the fact that he was looking at getting these sentences stacked, and I think by him accepting responsibility to the extent that he did with the bench trial, I think that the concurrent sentence takes care of that.

I mean, I looked at the -- I looked at the picture, the photograph of him in this particular instance. I looked at the Defendant's Exhibit Number 1. I drew the conclusions that I drew. And I, frankly, in doing the sentence was not moved one way or the other by the government's presentation. However, if you feel a need, for the record, to get your hands on some documents or pictures, then you can discuss that with [the United States] and we can do what we have to do to supplement the record.

But for the eventual reader of this case, [the government's] comments did not enter into my thought process.

Thus, remanding for resentencing is unnecessary because the district court went to great lengths to clarify that it made its sentencing determination without regard to the type of weapon that Peterson used in the prior robbery. *See, e.g.*, *United States v. Scott*, 804 F.2d 104, 107 (8th Cir. 1986) (declining to remand for resentencing because district court had not relied on allegedly erroneous evidence). The district court explicitly stated that it was not considering the type of weapon that Peterson used in the prior robbery. Instead, it focused on the circumstances of the crime at issue, the fact that it was Peterson's third bank robbery, and Peterson's eligibility for consecutive sentences.

Peterson argues that he demonstrated prejudice because the court indicated that his sentence would have been "about the same" and "substantially the same" even if he had received an additional one-level reduction for acceptance of responsibility. However, this claim refers to prejudice that Peterson may have suffered by not receiving an additional one-level reduction for acceptance of

responsibility, which is inapplicable to Peterson's sentencing claim for two reasons. First, Peterson does not challenge in his briefs the denial of an extra one-level reduction for acceptance of responsibility. Second, the United States stated that it declined to move for the additional one-level reduction because it was still put to the burden of a lengthy investigation. *See United States v. Lapsins*, 570 F.3d 758, 770-71 (6th Cir. 2009) (holding that the United States may decline to move for a one-level reduction as long as the decision does not rest on an impermissible factor and is not arbitrary). Thus, because the district court did not rely on erroneous evidence at sentencing and Peterson did not challenge the denial of an extra one-level reduction for acceptance of responsibility, we hold that Peterson is not entitled to a remand for resentencing.

## IV. PHOTO IDENTIFICATION CLAIM

"We review the denial of a motion to suppress identification evidence for clear error." *United States v. Beverly*, 369 F.3d 516, 538 (6th Cir. 2004). "The Due Process Clause prohibits the use of identifications which under the totality of the circumstances are impermissibly suggestive and present an unacceptable risk of irreparable misidentification." *Carter v. Bell*, 218 F.3d 581, 605 (6th Cir. 2000). To assess the validity of a pretrial identification, we follow a two-step analysis: we first determine whether the identification procedure was unduly suggestive; then, if we find that it was, we consider the totality of the circumstances to determine whether the identification was nevertheless reliable. *Ledbetter v. Edwards*, 35 F.3d 1062, 1070-71 (6th Cir. 1994) (applying *Neil v. Biggers*, 409 U.S. 188, 198 (1972)).

First, we find that the district court correctly held that the procedure used to obtain the pre-trial identification was not unduly suggestive. Peterson claims that the photo array was unduly

suggestive because his photo was the only one in dark clothing, which was part of the description of the robber; there was an apparent difference in age between his photo and that of the other individuals; and the officers asked Bowman whether she could identify the robber from the photo array, thereby suggesting that the robber was found in one of the six photos. Having reviewed the photo array, we conclude that it is not unduly suggestive. In light of the many substantial similarities between those in the photo array, the alleged differences in clothing and age are too minor to render the spread unduly suggestive. *See, e.g.*, *United States v. Sullivan*, 431 F.3d 976, 985 (6th Cir. 2005) (upholding determination that array did not improperly single out defendant when he was the only suspect with noticeably blue eyes and the robber had been described as having blue eyes).

The police officer's inquiry whether Bowman could identify the robber from the photo array was not unduly suggestive. Furthermore, Bowman's two possible viewings of photographs of the robber before the identification does not render the identification unduly suggestive. The fact that Bowman viewed a photograph of the robber in the newspaper within a week of the robbery does not render the identification unduly suggestive because the photo was taken from the Bank's security camera during the commission of the robbery and thus would have been no different than what she saw that day in the Bank. In addition, although Peterson notes that Bowman testified that she saw a picture when she was interviewed for the first time, this bare statement without more is insufficient to establish that the procedure was unduly suggestive.

Second, even if the procedure used to obtain Bowman's pretrial identification were unduly suggestive, an analysis of the totality of the circumstances under the *Biggers* test still assures us that

there was no substantial likelihood of misidentification in this case. In assessing the reliability of the identification, we consider five factors:

> (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of observation; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness when confronting the defendant; and (5) the length of time between the crime and the confrontation.

*Ledbetter*, 35 F.3d at 1071.

First, Bowman had ample opportunity to view the suspect when she watched him fill out paperwork in the lobby of the Bank and saw him face-to-face when he pointed a weapon at her. *Cf. United States v. Hill*, 967 F.2d 226, 232 (6th Cir. 1992) (holding that a bank teller's in-court identification was reliable even though the teller "had only a couple of minutes to view a robber who was disguised with a ball cap, sunglasses, and a bandage on his nose"). Second, she devoted her full attention at one point to the suspect's face. Third, she accurately described aspects of his appearance, including his dark hat, sunglasses, dark shirt, and jeans. Fourth, she testified that she was 99.9% sure of her identification of Peterson from the photo array. Fifth, although the length of time between the crime and the confrontation, one year and eight months, was substantial, this delay is not dispositive. *Cf. id.* at 233 (holding that a bank teller's in-court identification was reliable even though five years had passed since the bank robbery). Because Bowman's identification of Peterson withstands a *Biggers* analysis, we **AFFIRM** the district court's denial of Peterson's motion to suppress the identification evidence.

## V. CONCLUSION

Peterson's constitutional rights under the Fifth and Sixth Amendments and his statutory rights under the Speedy Trial Act were not violated. Furthermore, the United States's misstatement at sentencing regarding evidence surrounding his prior robbery does not require a new sentencing proceeding. Finally, the district court correctly denied Peterson's motion to suppress the pre-trial identification. Thus, we **AFFIRM** Peterson's conviction and sentence.