# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————————

No. 10-2561

———————————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Antonio Harris, | * | |
| | * | [PUBLISHED] |
| Appellant. | * | |

———————————

Submitted: January 13, 2011
Filed: February 25, 2011

———————————

Before MURPHY, HANSEN, and MELLOY, Circuit Judges.

———————————

HANSEN, Circuit Judge.

A jury found Antonio Harris guilty of unlawful possession of a firearm and ammunition as a previously convicted felon in violation of 18 U.S.C. § 922(g)(1). Harris appeals his conviction, challenging the district court's[1] admission of eyewitness identification evidence. He also challenges the legal sufficiency of the evidence supporting the jury's verdict. Because the district court properly admitted the

———————————

[1]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

eyewitness identifications, and the verdict is supported by sufficient evidence, we affirm.

I.

On the afternoon of August 29, 2008, at least one armed man entered a St. Louis city park and shot and injured four people. Law enforcement responded to a 911 call and began investigating the shootings. Witnesses described the shooter as a black man with long dreadlocks. Within minutes of the shooting, the investigation led police to suspect Harris.

Detective Daniel Schulte of the St. Louis Metropolitan Police Department, who has significant experience in preparing photographic lineups, obtained a picture of Harris taken after a previous arrest. Detective Schulte entered Harris's physical characteristics into a computer program, and the program randomly selected seventy-five photos with similar characteristics.

From those, Detective Schulte picked five photographs he believed to have characteristics most similar to Harris's photo. Detective Schulte considered the background color of each photograph to ensure that he selected photographs with similar backgrounds. To our eyes, no two of the photographs have perfectly identical backgrounds; each background is a slightly different shade of grey. Upon close inspection, the photo of Harris has a slightly blue or violet hue.

After the detective chose the five photographs, the computer program generated a photographic lineup featuring two rows of three pictures each. The program randomly selected the location of each photograph within the lineup. The program placed the photograph of Harris in position number four, or the lower leftmost position.

-2-

Within an hour of the shootings, Detective Schulte had created the photographic lineup and had returned to the park to interview the witnesses. Reviewing the photographic lineup independently of each other, three witnesses unequivocally identified Harris as the shooter. Approximately one hour later, Detective Schulte presented the photographic lineup to A.L., a hospitalized juvenile victim of the shooting. A.L. also identified Harris as the shooter. Two of those four witnesses had seen Harris in the neighborhood before.

Harris pleaded not guilty to unlawful possession of a weapon and ammunition by a felon and later moved to suppress the evidence of the eyewitness identifications that occurred on the day of the shootings as well as any future in-trial identification by any witness who had seen the photographic lineup. The evidentiary issue was referred to a magistrate judge,[2] who recommended denying Harris's motion to suppress. The district court adopted the magistrate judge's recommendation and denied the motion to suppress.

At trial, among other evidence, the Government presented testimony from a witness to the shootings, named Jermal Holt. Holt testified that he had seen the shooter in the neighborhood of the shooting on multiple previous occasions. Holt also testified that on the day of the shooting he identified the shooter in a photographic lineup presented to him by police. Additionally, Holt identified Harris as the shooter during trial. Likewise, A.L., the juvenile victim of the shootings mentioned above, testified that he had seen Harris in the neighborhood on occasions before the shootings and that he had identified Harris as the shooter in a photographic lineup shown to him while he was in the hospital on the day of the shootings. Additionally, the Government presented testimony from Christopher Madison. Madison testified that, on the day of the shootings, he provided Harris with a handgun so that Harris could

---

[2]The Honorable David D. Noce, United States Magistrate Judge for the Eastern District of Missouri.

protect Madison as Madison sold drugs. Madison had loaded the handgun with ammunition before he gave it to Harris. As the two were driving around and selling drugs, Madison witnessed Harris exit the vehicle with the handgun and shoot into a group of people in a city park. At one point, he watched Harris kneel to take better aim in order to fire at a running man. Harris then returned to the vehicle, and Madison drove the two of them away from the scene of the shootings. Madison testified that the handgun was empty when Harris returned to the car.

The jury found that Harris unlawfully possessed a weapon and ammunition as a previously convicted felon, and the district court sentenced him to 120 months' imprisonment for that crime. Harris appeals.

II.

Harris asks us to reverse his conviction because he claims the eyewitness identification evidence admitted at trial violated his due process rights. He argues that the district court should have suppressed the evidence of the eyewitness identifications of Harris in the photographic lineup on the day of the crime as well as the in-court identifications of Harris by the witnesses at trial who had previously identified Harris in the challenged photographic lineup. Specifically, Harris argues that the photographic lineup was impermissibly suggestive because the backgrounds of the various photographs were of different colors.[3] Harris does not challenge the method

---

[3]Our review of the record suggests that Harris did not argue to the district court, in either his written motions to suppress or orally at the suppression hearing, that the backgrounds of the photographs in the lineup resulted in an impermissibly suggestive lineup. Normally, we deem arguments not made to the district court to be forfeited on appeal and subject to review only under the plain error standard. United States v. Wisecarver, 598 F.3d 982, 988 (8th Cir. 2010). The Government argues that our review of this issue is further limited by the procedural fact that Harris failed to object to the magistrate judge's recommendation. We need not tarry long on the standard of review, as even the *de novo* reviewed requested by Harris requires us to affirm the

in which the photographic lineup was created or administered to the witnesses. He challenges only the lineup's content.

"'Convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" United States v. Tucker, 169 F.3d 1115, 1117 (8th Cir. 1999) (quoting Simmons v. United States, 390 U.S. 377, 384 (1968)). "[W]ith the deletion of 'irreparable' [the rule] serves equally well as a standard for the admissibility of testimony concerning the out-of-court identification itself." Neil v. Biggers, 409 U.S. 188, 198 (1972). Thus, Harris "must first show that the out-of-court identification procedures were impermissibly suggestive." Armstrong v. Gammon, 195 F.3d 441, 445 (8th Cir. 1999), cert. denied, 529 U.S. 1092 (2000). Only if the photographic lineup was impermissibly suggestive must we proceed to analyze, under the totality of the circumstances, whether the impermissibly suggestive lineup created a likelihood of misidentification violating due process. See, e.g., id. at 445-46 (holding that the out-of-court identification procedures were not impermissibly suggestive and foregoing consideration of the likelihood of misidentification).

Our review of the photographic lineup accords with the findings of the district court. Harris's photograph was one among six photographs shown to each eyewitness. See United States v. Rose, 362 F.3d 1059, 1066 (8th Cir. 2004) (affirming denial of motion to suppress a photographic lineup including six pictures of individuals with same basic features as not impermissibly suggestive). Each photograph depicts a black male of approximately the same age and size as Harris. Each man has facial hair. Five of the six men have dreadlocks of slightly varying length, while one man has a braided hairstyle similar to the dreadlock hairstyle. The background in each

district court. Cf. United States v. Rose, 362 F.3d 1059, 1066 (8th Cir. 2004) (applying de novo review of motion to suppress when issue involves constitutional due process challenge).

photograph is of a slightly different shade of gray. The background in the photograph of Harris is neither the lightest photograph in the lineup nor the darkest. Upon close inspection, however, the photograph of Harris has a slightly blue or violet hue.

The slightly different backgrounds do not render the lineup impermissibly suggestive. United States v. McComb, 249 Fed. Appx. 429, 440 (6th Cir. 2007) ("A darker hue or different colored background does not 'in [itself] create an impermissible suggestion that the defendant is the offender.'" (alteration in original) (quoting United States v. Burdeau, 168 F.3d 352, 358 (9th Cir. 1999))); Mitchell v. Goldsmith, 878 F.2d 319, 323 (9th Cir. 1989) ("The various background colors among the photographs . . .[do] not make the lineup unduly suggestive."). Other than repeating the district court's observation that the background of his photograph has a slightly blue or violet hue, Harris does not explain why the minute variation in color would suggest to the witnesses that Harris was the offender or the person the police suspected. We find no evidence in the record that the identifying witnesses were influenced by the slight color variation. As such, we hold that the photographic lineup used in this case was not impermissibly suggestive. See United States v. Knight, 382 Fed. Appx. 905, 907 (11th Cir. 2010) ("Although Knight was of a lighter complexion than four of the other individuals in the array and the background lighting in his photograph was slightly different from some of the other photographs, neither of these differences were [sic] stark enough so as to be unduly suggestive."); United States v. Douglas, 525 F.3d 225, 243 (2d Cir.) ("As to the background colors of the photos, no two are the same, and no picture stands out because of its background color."), cert. denied, 129 S. Ct. 619 (2008).

Harris also argues that the jury's verdict is not supported by substantial evidence. To convict Harris of violating 18 U.S.C. § 922(g)(1), the Government was required to prove that Harris (1) previously had been convicted of a criminal offense punishable by a term of imprisonment greater than one year, (2) knowingly possessed a firearm, and (3) the firearm had been in or affected interstate commerce. See United

States v. Claybourne, 415 F.3d 790, 795 (8th Cir. 2005). Harris addresses only the second element.

As detailed above, the Government presented testimony from multiple eyewitnesses identifying Harris as the shooter. This evidence included testimony from two eyewitnesses who recognized the shooter as someone they had seen in the neighborhood on previous occasions. Further incriminating testimony came from the witness Madison who drove Harris to and from the crime scene and also provided the handgun used in the offense. Apart from the due process argument we rejected above, Harris's arguments primarily attack the reliability of each witness's testimony. It has been long settled that such arguments are properly reserved for the jury, see Zammar v. United States, 217 F.2d 223, 225 (8th Cir. 1954) ("The question of identification of the Defendant was clearly for the jury. There was evidence in the record to support the verdict. It is not the province of this court to weigh the evidence and determine where the preponderance may be."). The jury in this case rejected Harris's arguments about witness reliability and convicted Harris. Its verdict is supported by more than sufficient evidence.

III.

Accordingly, the judgment of the district court is affirmed.

_____