OPINION
McKEAGUE, Circuit Judge.
Appellant-Defendants Michael Steckel and Michael Wells appeal the district court’s denial of their motions for summary judgment on qualified immunity grounds. The district court denied summary judgment after determining that an unduly suggestive photo array tainted the witness identifications necessary to establish probable cause as required by the Fourth and Fourteenth Amendments. We conclude that Steckel and Wells had probable cause to seek an arrest warrant and did not influence the decision to prosecute. Because Steckel and Wells’ conduct did not violate the Constitution, they are entitled to qualified immunity, and summary judgment is appropriate. We therefore REVERSE the district court and hold that Appellant-Defendants Steckel and Wells are protected by qualified immunity and entitled to summary judgment.
I.
In the summer of 2007, police in the city of Warren, Michigan started to receive reports of a string of larcenies. The crimes involved a similar modus operandi An elderly gentleman, later nicknamed by the media “the Suave Senior,” would gain access to the victims’ homes by posing as a neighbor or a friend. Once inside, he would ask for a cup of coffee, excuse himself to use the restroom, and then proceed to steal money or personal affects. The victims described the suspect as a white male in his seventies with white-gray hair, weighing 170 pounds and standing about 5' 10" in height.
Nearly one year later, on approximately August 20, 2008, the police in nearby Canton, Michigan received a larceny complaint from Lyle and Victoria Whipple. The Whipples stated that a few weeks prior to the larceny, a 5' 10" heavyset male named “George” had approached them outside of a grocery store and engaged them in conversation. Two weeks later, “George” appeared at the Whipple home and claimed to be a neighbor. Only Lyle Whipple was home at the time. While at the house having a cup of coffee, “George” excused himself to use the restroom. Later that evening, after Victoria Whipple returned home, the couple discovered that several hundred dollars had been stolen.
The Canton Police received a second larceny complaint on September 19, 2008 from Robert and Marie Temple. A stranger, who identified himself as a neighbor named “Chester Morton,” gained entrance to the apartment under the auspices of having a cup of coffee and then stole money after excusing himself to use the restroom. Robert Temple discovered the theft and phoned the police after “Chester” left. The Temples described the thief as an older white male, dressed nicely, and approximately 5' 7" in height and weighing 170 to 180 pounds.
Following the Whipple and Temple thefts, Canton Detective Michael Steckel (“Steckel”) posted a message on the Law Enforcement Information Network describing the two thefts and seeking infor *138 mation about similar incidents. Sergeant David Centala of the St. Clair Shores Police Department responded to the post and indicated that similar cases had occurred in Macomb, Warren, and St. Clair Shores. The St. Clair Shores Police Department had identified James Legenzoff as a suspect, but had not been able to pursue the case further because of the age, health, and death of the witnesses. Sergeant Centala further noted that Legenzoffs business, involving the sale of coffee, took Legenzoff through Canton and Wayne Counties.
Based upon the tip that Legenzoff might be a possible suspect, the Canton Police used the Court and Law Enforcement Management Information System to create a photo array, which included head shots of Legenzoff and five random older white men with grayish-white hair. The men in the photo array are wearing a t-shirt, a tank top, and a hoodie; one man is shirtless; and Legenzoff and one other individual are shown in collared shirts. Importantly, Legenzoffs photo in the array had a blue background because it was taken from his driver’s license photo. The backgrounds for the other individuals were varying shades of gray.
On September 23, 2008, Canton Police Detective Michael Wells (“Wells”) showed this photo array to the Temples. Shortly after looking at the array, Robert Temple identified Legenzoff and indicated that he was “100% positive” as to his selection. Marie Temple also quickly identified Le-genzoff and expressed her complete conviction in the selection.
Around this same date, Detective Wells independently met with Lyle Whipple and showed him the same photo array. Lyle Whipple pointed to photo # 2, which contained the photo of Legenzoff, and indicated that this looked like the suspect but that he was not completely positive, as he had been tired during his encounter with Legenzoff. The following day, Detective Wells showed the same photo array to Victoria Whipple. While Victoria Whipple had not been present at the time of larceny, she had met “George” two weeks prior during the grocery store encounter. After identifying Legenzoff, she indicated that she was absolutely positive in her identification. Lyle Whipple, who was present at the time of his wife’s identification, indicated that he was about 80% positive that photo #2 was Legenzoff, and expressed his belief that he would be able to identify Legenzoff if he saw him in person.
Canton Police subsequently sought arrest warrants for Legenzoff for the Temple and Whipple larcenies. The Whipple warrant was denied because there was “nothing to show [Legenzoff] took the money.” R.71-28, Wayne Cnty. Prosecuting Attorney’s Recommendation at B, Pa-gelD # 1842. But a warrant for the Temple larceny was granted on October 4, 2008, and Legenzoff was arrested for the Temple crime on October 14, 2008. Le-genzoff later surrendered himself for arrest on the Whipple crime. Ultimately, however, the Temple and Whipple cases against Legenzoff fell through and the charges against him were dismissed.
On April 4, 2011, Legenzoff filed a 42 U.S.C. § 1988 complaint against the officers and municipalities. He alleged that they had unlawfully arrested him, maliciously prosecuted him, and used unduly suggestive identification procedures.- Le-genzoff later abandoned his claims against the municipalities. Steckel and Wells filed a motion for summary judgment, arguing that they were protected by qualified immunity.
The district court granted in part and denied in part the motion. The court granted the motion for summary judgment regarding the unduly suggestive identifica *139 tion procedure claim, holding that the “right to be free from unduly suggestive suggestive identification procedures is not a substantive due process right.” R. 82, Op. and Order at 12, PagelD # 2512. Le-genzoff has not appealed this adverse determination, and therefore, we do not address it here.
The district court denied, however, Steckel and Wells’ motion for summary judgment on the unlawful arrest and malicious prosecution claims. The court determined there was a disputed question of fact regarding whether Steckel and Wells used a color photo array or a black-and-white array.[1] According to the court, the use of a color array would have highlighted the fact that Legenzoff s background was a different color from that of the other individuals. The court also noted that Legen-zoff s hair and clothing were different from those of the other individuals. The district court determined that a jury could find that these discrepancies taken together— the different background, the different hair color, and the distinct clothing — made the photo array suggestive and possibly tainted the identifications, which were necessary to establish probable cause. Therefore, because there was a genuine dispute of material fact regarding which photo array was used, the district declined to extend summary judgment on the basis of qualified immunity.
This appeal from Steckel and Wells followed.
II.
This Court reviews determinations of summary judgment de novo. See Minadeo v. ICI Paints, 398 F.3d 751, 756 (6th Cir.2005). “The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed. R.Civ.P. 56(a). Facts must be viewed “in the light most favorable to the non-moving party.” Flagg v. City of Detroit, 715 F.3d 165, 178 (6th Cir.2013).
Qualified immunity played a key role in the district court’s summary judgment determination. The doctrine of qualified immunity provides government officials with “immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.” Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). This protection, which applies to suits brought under § 1983, balances two competing goals: “the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.” Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).
As the Supreme Court has indicated, however, “[t]he qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.” Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (internal citation and quotation marks omitted). This Court reviews a district court’s denial of qualified immunity in a § 1983 action de novo. McCullum v. Tepe, 693 F.3d 696, 699 (6th Cir.2012).
*140 A. Interlocutory Appellate Jurisdiction
The district court’s denial of qualified immunity is appealable under the collateral order doctrine in 28 U.S.C. § 1291. See Mingus v. Butler, 591 F.3d 474, 479 (6th Cir.2010). This Court has “held that 28 U.S.C. § 1291 [cannot] serve as the basis for appellate jurisdiction for appeals from qualified immunity denials to the extent that those appeals took issue with the district court’s determination that there existed a genuine issue of fact for trial.” Gregory v. City of Louisville, 444 F.3d 725, 742 (6th Cir.2006) (citing Johnson v. Jones, 515 U.S. 304, 313, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995)). Therefore, this Court will only review pure issues of law, and treat mixed questions of fact and law as questions of law. See Gregory, 444 F.3d at 743; Gardenhire v. Schubert, 205 F.3d 303, 312 (6th Cir.2000). In other words, if there is a genuine issue of material fact that resulted in the denial of qualified immunity and summary judgment, the factual dispute is reserved for a jury and is not immediately appealable. See Crockett v. Cumberland College, 316 F.3d 571, 578 (6th Cir.2003).
The district court determined that there was a triable issue of fact regarding whether a color photo array was used and whether it was used prior to a black-and-white photo array.[2] Such an issue of material fact would typically bar interlocutory review by this Court. Appellants, however, have conceded for the purpose of this appeal that the color photo array was employed first, which effectively eliminates the triable issue of fact from the case. See Mingus, 591 F.3d at 479 (permitting appellate review of an alleged constitutional violation for purposes of a qualified immunity inquiry, despite the district courts finding of a genuine issue of material fact, because the appellant “conceded the facts in the light most favorable to [the appellee] and therefore raised a pure issue of law”) (emphasis added); Harrison v. Ash, 539 F.3d 510, 517 (6th Cir.2008) (same). As there is no longer an issue of fact, this Court is presented only with a pure issue of law regarding the sufficiency of the evidence for probable cause. This court therefore has jurisdiction to hear this appeal. See Hale v. Kart, 396 F.3d 721, 728 (6th Cir.2005) (“When no material dispute of fact exists, probable cause determinations are legal determinations that should be made by a court.”).
6. Qualified Immunity
Qualified immunity is assessed using a two-step sequence: “First, a court must decide whether the facts that a plaintiff has alleged ... make out a violation of a constitutional right ... Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was ‘clearly established’ at the time of defendant’s alleged misconduct.” Pearson v. Callahan, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). The Supreme Court has clarified, however, that this procedure is a not a strict order of battle and that “courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.” Id. at 242, 129 S.Ct. 808. If a court determines that a constitutional right is not “clearly established,” the court need not *141 make out a constitutional violation for qualified immunity to apply. Id.
1. The Unlawful Arrest Claim
We begin with the second prong of the qualified immunity test, whether the constitutional rights at issue were “clearly established.” Id. “This inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.” Id. at 244, 129 S.Ct. 808 (emphasis added). Put otherwise, “[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.” Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) receded from by Pearson, 555 U.S. at 223, 129 S.Ct. 808.
We first identify the constitutional rights at issue in this case. Legenzoff broadly argues that his unlawful arrest claim is supported by the Fourth and Fourteenth Amendments because “[a]ny arrest requires probable cause.” Pl.’s Br. at 36. The Supreme Court has indicated that courts should not apply the test of “clearly established law” at this level of generality because it “bear[s] no relationship to ... objective legal reasonableness ... [and because it] converts] the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.” Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (internal citation and quotation marks omitted).
In fact, the right at issue is whether it was “clearly established that the circumstances with which [the officers were] confronted did not constitute probable cause” for purposes of the Fourth Amendment.[3] Id. at 640, 107 S.Ct. 3034. Put differently, we are assessing whether it was clearly established that a reasonable officer would not find probable cause where several eyewitness identified a defendant using a possibly suggestive photo array. We first assess the arguments in favor of a finding of probable cause and then the arguments against it under a *142 totahty-of-the-circumstances analysis. Applying this standard to these particularized circumstances, we cannot say that “in the light of pre-existing law the unlawfulness [was] apparent.” Id. at 640, 107 S.Ct. 8084. Therefore, the officers are protected by qualified immunity.
An arrest is constitutionally valid if “at the moment the arrest was made, the officers had probable cause to make it— whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.” United States v. Dotson, 49 F.3d 227, 230 (6th Cir.1995) (quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). The analysis takes into account the totality of the circumstances, and the standard does not require the more exacting precision of the beyond a reasonable doubt or the preponderance of the evidence standards. Gates, 462 U.S. at 233-34, 103 S.Ct. 2317. Rather, the Supreme Court has emphasized that probable cause requires “only the probability, and not a prima facie showing, of criminal activity.” Id.
In assessing probable cause, this Court has held that an eye witness identification and accusation, by itself, is sufficient to establish probable cause. In Ahlers v. Schebil, 188 F.3d 365, 371 (6th Cir.1999), an inmate accused a police official of sexual assault. When the charges were later dismissed, the police official sought § 1983 damages alleging, among other things, that he had been arrested without sufficient probable cause. This Court rejected the claim noting that the victim’s accusation, standing alone, was sufficient to establish probable cause. As this Court explained,
A law enforcement officer is entitled to rely on an eyewitness identification to establish adequate probable cause with which to sustain an arrest ... An eyewitness identification will constitute sufficient probable cause unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation ... This comports with the general notion that, since eyewitnesses’ statements are based on firsthand observations, they are generally entitled to a presumption of reliability and veracity.
Id. at 370 (internal citation and quotation marks omitted) (emphasis added). Ahlers clearly stands for the proposition that a single witness identification is sufficient to establish probable cause.
Both Marie and Robert Temple separately identified Legenzoff and stated that they were “100% positive” that he had robbed their house. The identification occurred mere days after they had been robbed, and both Marie and Robert Temple spent several minutes with Legenzoff, while he drank his coffee, and were able to closely observe him under good conditions during daylight hours. It should also be noted that their description of the suspect as being an elderly man with gray hair, approximately 5' 7" tall, and weighing 170 pounds, closely conforms to Legenzoffs actual height and weight. Under these circumstances — even if the photo array was flawed — there is no reason to doubt the Temples’ identifications. They were reliable.
As to the Whipples’ identification, approximately one month after being robbed, Lyle Whipple indicated that Legenzoffs photo looked like the suspect but stated that he was not positive. Subsequent to *143 this, Victoria Whipple, who was absent at the time of the theft but who had previously met Legenzoff at a grocery store, selected Legenzoffs photo and expressed absolute conviction in her identification. Following this, Lyle Whipple, who had observed his wife’s identification, stated he was about 80% positive concerning his identification of Legenzoff. While neither identification is ideal — particularly because Victoria Whipple was not present for the alleged crime and because Lyle Whipple may have been influenced by his wife’s identification[4] — probable cause does not require perfection, and witness identifications are “entitled to a presumption of reliability and veracity.” Id,.; see also Peet v. City of Detroit, 502 F.3d 557, 564 (indicating that probable cause existed despite inconsistencies in the witnesses’ statements and the fact that the identification occurred relatively quickly at night time). Moreover, here, the Whipples’ identification is corroborated by the Temples’ claim that a man, who looked like Legenzoff, employed a similar modus op-erandi to rob seniors.[5]
If an accusation by a single individual is sufficient to constitute probable cause, per Ahlers, it stands to reason that independent identification by two people, such as the Temples or the Whipples, would more than suffice, especially where the identifications are as strong as they are here.
Having determined that the eyewitness identifications support a finding of probable cause, we now look at the arguments against it. The district court and Legen-zoff contend that a jury could find the witnesses were mistaken or failed to accurately identify Legenzoff because the photo array was suggestive. They offer multiple grounds for this claim, in particular that there are differences in the background, hair, and clothing of Legenzoffs photo and the other photos.[6] We address each of the district court’s and Legenzoffs concerns, and then assess whether taken together, the discrepancies indicate that it was clearly established that there was not probable cause for arrest.
The district court’s first concern regarded the background color used in the photo array. Legenzoffs photo has a blue background, while the background of the other photos in the lineup are varying shades of gray, two of which appear to have a slightly bluish tinge. Many circuit court s,[7] *144 however, including the Sixth Circuit in unpublished opinions, have held that the use of a different background color is not by itself suggestive. See United States v. McComb, 249 Fed.Appx. 429, 436-39 (6th Cir.2007) (holding that “a darker hue or different colored background does not in [itself] create an impermissible suggestion that the defendant is the offender,” where the defendant was in front of a green-colored background while the other photos used a blue background) (internal citation and quotation marks omitted); United States v. Soto, 124 Fed.Appx. 956, 965 (6th Cir.2005) (rejecting the argument that the photo was suggestive because the background was lighter and the defendant was wearing a white shirt while the others wore dark clothing).
The district court’s second concern related to hair color. The district court contended that white hair was a key part of the description offered by the victims, and none of the other photos contained men with purely white hair. While Legenzoff s hair appears overall to be the whitest, the hair color of the men in the array ranges from grayish-black to several photos of men with completely grayish-white hair, similar to Legenzoff. Further, according to the police reports, both the Temples and Whipples indicated the suspect had gray hair. Thus, rather than setting Legenzoff apart, the inclusion of photos of men with gray-white hair conformed to the description provided by the victims and likely made the identification of Legenzoff more difficult, thereby contributing to the reliability of the identifications.
The district court’s third concern regarded clothing. Witness descriptions indicated that the suspect was nicely dressed. In the photo array, one man is wearing a t-shirt, one is wearing a tank top, one is wearing a hoodie, and one is shirtless, while Legenzoff and one other individual are shown in collared shirts. Given that only Legenzoff and the other individual could be characterized as “nicely dressed,” the court concluded that the clothing also raised questions as to whether the photo array was tainted. Many cases, however, indicate that a photo array is not suggestive where only the defendant is dressed in clothing or has a personal attribute that is expressly referenced by a witness. See United States v. Washington, 714 F.3d 962, 968 (6th Cir.2013) (holding that an array was not suggestive where several witnesses described the defendant as having blue eyes and the defendant was the only person in the photo array with noticeably blue eyes); United States v. Peterson, 411 Fed.Appx. 857, 864-65 (6th Cir.2011) (holding that an array was not suggestive even though the defendant was the only person in dark clothing, which was part of the description of the robber, and older than the other photographed persons).
Legenzoff echoes the district court’s concerns regarding the background, hair *145 color, and clothing and provides two additional arguments. He first contends that the identification procedures were not reliable because the witnesses were together when they were each shown the photos array. While the Temples were in the same room when they identified Legenzoff, they were not provided an opportunity to discuss the photo array, and they made their determinations independently. Similarly, Lyle Whipple’s first identification occurred when he was alone. While the identifications arguably might have been stronger if each had taken place in isolation from other potential witnesses, we cannot say that the conditions tainted the identifications, given the other indicia of reliability.
Legenzoffs second argument regards the alleged post-identification feedback. This feedback took the form of media reports, identifying Legenzoff as the “Suave Senior,” and the fact that Detective Wells allegedly told Marie Temple after she identified Legenzoff in the photo array that there were other cases involving Legen-zoff. Because all of this alleged feedback occurred after the witnesses had identified Legenzoff, there is no reason to believe it impacted their identifications.
Taken altogether, and viewed under the totality of the circumstances, only three attributes of the identification procedure might have affected the reliability of the photo array: (1) Legenzoffs photo included a different background from the other photos; (2) only Legenzoff and one other person in the array wore clothing that arguably matched the description of the clothing referenced by the witnesses; and (3) the witnesses were in the same room when they independently viewed a photo array. Legenzoff, however, has not cited to any case clearly indicating that a photo array taken under these conditions would not satisfy a probable cause determination.
The case that is closest in factual terms to the present one is United States v. Brennick, 405 F.3d 96, 99-100 (1st Cir.2005), and it does not support the district court’s conclusion that a different colored background, dissimilar hair, and distinct clothing would be suggestive. In Bren-nick, the First Circuit held that a photo array was not unduly suggestive despite the fact that the defendant’s photo was obtained from an identification card, while four of the other photographs were booking photographs; the defendant’s hairstyle, forehead, and clothing differed from the other individuals; and the background of the defendant’s photo was darker than some of the others. Id. As the First Circuit concluded, “[o]n the whole, there is a high degree of similarity” among the men and “[t]he array does not in any way draw suggestive attention to [the Defendant].” Id.
The district court distinguished Bren-nick on two grounds: first, that Legen-zoffs clothing somewhat matched the witness identifications, whereas in Brennick the defendant was merely dressed differently from the other persons; and second, that the police in Brennick used a black- and-white photo array, whereas here a col- or array was used. But even assuming that Brennick is distinguishable, which is debatable, the fact that a highly similar photo array was ruled not suggestive and therefore reliable, highlights that this is at best a close call. Given these circumstances, we cannot say that the use of this photo line-up would taint the witness identifications, nor that the “contours of the right [were] sufficiently clear that a reasonable official would understand that what he [was] doing violate[d]” the determination of probable cause. Anderson, 483 U.S. at 640, 107 S.Ct. 3034; Thacker, 328 F.3d at 260 (“Insofar as the question of probable cause here is a close one, *146 reasonable officials could disagree as to whether probable cause existed ... Thus, the defendant officers are entitled to qualified immunity....”)-[8] And even if we were to find that the array was suggestive, “[w]e have recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials — like other officials who act in ways they reasonably believe to be lawful — should not be held personally liable.” Anderson, 483 U.S. at 641, 107 S.Ct. 3034.
Thus, given the strength of the multiple witness identifications, and the minimal grounds on which Legenzoffs photo differed from the others, we cannot say it was clearly established that there was no probable cause for arrest, even despite the alleged infirmities in the photo array. And because we find the law was not clearly established, we decline to reach the issue of whether there is a violation of a constitutional right. For the aforementioned reasons, we find the officers should be afforded immunity for the unlawful arrest claim.
2. The Malicious Prosecution Claim
Malicious prosecution constitutes a separate cognizable constitutional claim and is distinct from a claim for unlawful arrest. See Sykes v. Anderson, 625 F.3d 294, 308 (6th Cir.2010). To bring a claim for malicious prosecution, a plaintiff must satisfy four requirements. First, “the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute.” Id. (internal citation and quotation marks omitted). Second, the plaintiff must show a lack of probable cause for the prosecution. Third, the plaintiff must show a deprivation of liberty as a consequence of a legal proceeding. Fourth, the proceeding must have been resolved in the plaintiffs favor. Id. Wells and Steckel concede that the fourth element has been satisfied, but contest whether the three remaining elements have been met.
Turning to the first prong, Legen-zoff argues that the officers influenced the decision to prosecute by manufacturing probable cause with the color photo array and by failing to inform the prosecutor of the identifications’ failings. This claim is not supported. “[A]n officer will not be deemed to have commenced a criminal proceeding against a person when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer’s truthful materials.” Sykes, 625 F.3d at 314. But an officer may be held liable for “making materially false statements either knowingly or in reckless disregard for the truth to establish probable cause for an arrest.” Gregory, 444 F.3d at 725. Here, the officers’ investigation report indicated that the witnesses had identified Legenzoff, and there is no indication that any false information was conveyed.
*147 Legenzoff argues that the officers failed to mention that the identifications were based on the color photo array, but both the court and the prosecution were aware that the array might have been in color. At the preliminary hearings held on January 9, 2009, Legenzoff s counsel specifically indicated that the photo arrays used by the police were in color, and witness testimony supported this claim. The court, nonetheless, found there was sufficient probable cause to bind Legenzoff over for the Temple theft. Again, on February 6, 2009, Legenzoffs counsel raised the issue of the color photo array, this time in greater detail:
We have, I think from exhibit number one, what is clearly a suggestive photographic array.... And, I think when you look at that identification record, it’s clear that, as she put it, one person jump out at her. The person with the shock of grey hair, who’s in the middle, who’s got the brightest photography. I think on this record, Your Honor, that that kind of identification, absent any corroboration, is insufficient even for purposes of probable cause.
R. 71-31, Page ID # 1908-09. And again, the court found that there was probable cause to bind Legenzoff over on the Whipple theft. Taken together, it is clear that the court and the prosecution were well aware of any alleged deficiencies in the identifications, and nonetheless believed that they satisfied the requirements of probable cause.
As no evidence has been presented that the officer’s turned over untruthful materials or that they showed reckless disregard for the truth to establish probable cause, the first element of a malicious prosecution claim fails. We need not address the other elements of the claim, and we therefore conclude that there has not been a constitutional violation for malicious prosecution and the officers are entitled to qualified immunity.
III.
For the foregoing reasons, we find that the denial of qualified immunity was improper and the appellants are entitled to summary judgment. We therefore REVERSE the district court’s opinion regarding the denial of qualified immunity and REMAND for entry of summary judgment in favor of the appellants and for any further action consistent with this opinion.

. The parties disputed with some vigor before the district court whether Wells presented a color photo array or a black-and-white photo array to the witnesses, and in the event that both arrays were shown, the parties strongly contested the order in which the arrays were presented. The Appellants have conceded for the purpose of this appeal that the witnesses were shown a color photo array and that it was shown first.

. The district court indicated that "there is a genuine dispute of material fact regarding which array was first administered,” R. 82, R. 82, Op. and Order at 9, PagelD # 2513, but as the officers have conceded this point for purposes of this appeal, we are at a loss as to what other "genuine issues” exist stripping us of jurisdiction as the dissent suggests.

. Our discussion here differs from the dissent’s analysis. The dissent discusses in its probable cause analysis whether the color photo array was suggestive and therefore contributed to a finding of probable cause, and references decisions, such as Neil v. Biggers, 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), which control whether a photo lineup and witness identification can be used as evidence at trial. The inquiry here, however, focuses on a pre-trial finding of probable cause, and as this circuit has stated, "evidence that supports probable cause for an arrest is not always admissible at trial.” United States v. Washam, 468 Fed.Appx. 568, 582 (6th Cir.2012); see Illinois v. Gates, 462 U.S. 213, 256, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Following our sister circuits, we do not find that it is necessary for our present analysis to formally incorporate into our probable cause discussion the Biggers's framework, which is commonly employed for the admissibility of witness identifications at trial. Compare Robinson v. Cook, 706 F.3d 25, 34 (1st Cir.2013) (declining to apply the Biggers 's framework to a probable cause assessment in a § 1983 case alleging unlawful arrest); Stansbury v. Wertman, 721 F.3d 84, 91 (2nd Cir.2013) (same); Phillips v. Allen, 668 F.3d 912, 914-15 (7th Cir.2012) (same); Good v. Curtis, 601 F.3d 393, 398 (5th Cir.2010) (similar); with Gregory v. City of Louisville, 444 F.3d 725 (discussing the Biggers's framework generally in the context of a one-on-one show-up analysis, not in the context of a probable cause determination). This is not to say that the court is turning a blind eye to potentially suggestive police procedures. These are still "relevant considerations in the totality-of-the circumstances analysis that has traditionally guided probable cause determinations” and we do consider them. See Gates, 462 U.S. at 233, 103 S.Ct. 2317; Cook, 706 F.3d at 34; Allen, 668 F.3d at 917. But this Court's analysis ultimately focuses on the issue of probable cause.

. Legenzoff draws this Court’s attention to the fact that Lyle Whipple was unable to identify Legenzoff in the preliminary exam in the courtroom and suggests that this raises questions concerning the validity of his initial identification. In assessing probable cause, we look at the "officer’s knowledge at the time of an arrest.” Crockett, 316 F.3d at 580.

. The Temple corroboration is relevant to the probable cause determination for the Whipple robbery even if it would not have been permitted as evidence in court. See Washam, 468 Fed.Appx. at 582.

. The district court also seemed to find compelling the officers’ admission that it would be suggestive to show a witness the color array before the black-and-white array. Wells and Steckel have conceded for purpose of this appeal that the color array was shown before the black-and-white array. Moreover, the relevant question before this Court is not whether the officers’ conduct violated their personal or departmental norms of conduct, but whether they violated the Constitution. See Smith v. Freland, 954 F.2d 343, 347 (6th Cir.1992) (indicating that a police officer’s conduct could violate a police department’s internal policy or commonly accepted police practice without violating the Constitution). And finally, it should be recalled that the determination of probable cause is an “objective” test. Pearson, 555 U.S. at 232, 129 S.Ct. 808.

.See United States v. Harris, 636 F.3d 1023, 1026 (8th Cir.2011) (holding that a variation in color between the defendant’s background and the other photographs did not render the *144 photo array suggestive); United States v. Brennick, 405 F.3d 96, 99-100 (1st Cir.2005) (holding that a photo identification was not suggestive although the defendant’s photo had a darker background than the other photos); United States v. Mathis, 264 F.3d 321, 333 (3d Cir.2001) (holding that a “slightly darker” background "did not significantly contribute to the array's unnecessary suggestiveness”); United States v. Burdeau, 168 F.3d 352, 357 (9th Cir.1999) (holding that a photo was not suggestive even though it was "darker than the rest” and the defendant had his eyes closed); United States v. Gay, 423 Fed.Appx. 873, 877 (11th Cir.2011) (finding that a photo array was not unduly suggestive even though the defendant’s photo and complexion were darker than the other photos and the defendant was wearing a different type of shirt); United States v. Knight, 382 Fed.Appx. 905, 907 (11th Cir.2010) (holding an array was not unduly suggestive where the background differed slightly and the defendant had a slightly different complexion).

. The dissent dismisses our Brennick analysis out-of-hand arguing that "in other cases posing similar disparities, this court has decided that photo arrays were unduly suggestive” We cannot help but note, after reviewing the cases cited by the dissent, that none of them actually indicate that police officers presented with circumstances actually similar to those in this case lacked probable cause to make an arrest. Even if these cases did establish that there was a close question as to whether the police conduct was or was not permitted by the constitution, we still could not say that it was "clearly established” that the officer’s conduct was unconstitutional. This is the question presented on appeal, not as the dissent suggests whether a reasonable jury might determine that there was insufficient probable cause.